STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ROBERT SINGLETARY, DEFENDANT-RESPONDENT.

Argued January 22, 1979—Decided May 23, 1979.

Mr. *William F. Lamb,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

Mr. *H. Richard Chattman,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

PASHMAN, J. The issue raised by this appeal is whether, under the facts of this case, the trial court's refusal to excuse for cause a prospective juror who had been the recent victim of a crime similar in nature to that with which a defendant was charged constituted reversible error, where the juror was subsequently excused through defendant's exercise of a peremptory challenge. The Appellate Division held that in the present case such a refusal amounted to prejudicial error, and ordered that defendant be given a new trial. We conclude that the trial court's decision did not transcend the bounds of reasonable discretion and that defendant received a fair trial. Consequently, we reverse and reinstate the conviction.

The facts of this case are essentially undisputed. On October 21, 1975, defendant and one Eugene Leggett were indicted by a Passaic County Grand Jury for robbery while armed, in violation of *N. J. S. A.* 2A:141-1 and *N. J. S. A.* 2A:151-5. The charges arose out of an August 18, 1975 hold-up of Robert Sandifer, an employee at Chuck's Wrigley Park Tavern in Paterson. The two men were tried separately and Leggett is not involved in this appeal.

Juror selection at defendant's trial commenced on January 23, 1976. Prospective jurors were closely questioned by the court concerning their relationship with persons participating in the case or employed in the law enforcement field; their involvement as victims in prior crimes; personal background; and their ability and willingness to serve fairly and impartially. At the conclusion of the day's proceedings, 17 peremptory challenges had been exercised by the defense, 9 had been utilized by the State,[1] and 4 prospective jurors had been excused for cause by the trial judge.[2]

Jury selection continued on January 26. After one prospective juror was excused due to acquaintance with State witnesses and another was peremptorily challenged by the defense, venireman Kenneth J. Sheeran was called. During the court's *voir dire* examination of Sheeran, the following colloquy occurred:

Q. Have you been the victim of a crime?
A. Yes.
Q. Will you tell me when, and the nature?
A. I work for a bank in New York City and it was held up on January 9th.
Q. January 9th of this year?
A. Of this year, yes, sir.
Q. Do you feel that that particular event, having been so recent, would have any effect on your ability to sit as a fair and impartial juror in this case?
A. No. I do not.

 * * * * * * * *

Q. Mr. Sheeran, will you apply the law as I will explain it to be regardless of any personal feeling you have about that law?
A. Yes.
Q. Do you have any bias or prejudice against a person simply because he's charged with a crime?

---

[1]Pursuant to *N. J. S. A.* 2A:78–7(c), the defense is entitled to 20 peremptory challenges and the State is allowed 12. *R.* 1:8–3(d).

[2]These veniremen were excused either because they were acquainted with the owner of the tavern where the robbery occurred or were familiar with State witnesses.

A. No.

Q. Do you know anything about this particular case?

A. No I do not.

Q. Do you or any members of your family have any interest in the outcome of a criminal case now pending in our courts?

A. No.

Q. Have you ever been party to, or personally interested in the outcome of a criminal case?

A. No.

Q. Would you give any greater or less weight to the testimony of a police officer simply because of his official capacity?

A. No.

\* \* \* \* \* \* \* \*

Q. Mr. Sheeran, if you're selected to serve on this jury, would you be a fair and impartial juror to both the State and to the defendant?

A. Yes, I will.

\* \* \* \* \* \* \* \*

After a brief sidebar conference, the questioning continued as follows:

Q. Mr. Sheeran, in connection with the bank robbery, which you've mentioned which occurred just a few weeks ago, were you actually involved in that particular robbery . . .

A. Yes.

Q. (continuing) or was it just a robbery in your particular branch?

A. No, I was involved in it.

Q. Was it an armed robbery?

A. Yes, it was.

Q. And do you feel that that particular circumstance, considering that this case involves a charge of robbery and being armed during the commission of the robbery, that that particular event so recently would not affect your ability in any way to sit on this case?

A. No, I do not.

The defense then exercised its 19th peremptory and dismissed Sheeran. Thus, Sheeran did not in fact sit as a juror in defendant's trial.

The sidebar conference which occurred during the interrogation of Mr. Sheeran involved a request by defense counsel that Sheeran be questioned as to the extent of his involvement in the bank robbery. Counsel indicated that if Sheeran

were, in fact, an actual victim of the crime he would move for his excusal for cause. The trial court, in response to these remarks, stated that inasmuch as Sheeran professed an ability to be fair and impartial no challenge for cause would be granted.

Subsequent to Sheeran's dismissal, three veniremen were peremptorily excused: two by the State and one by defense counsel — who thereby exercised his final peremptory challenge. Finally, a jury of 14 was selected and empanelled. Defense counsel stated for the record his version of the sidebar conference, noted his contention that Sheeran should have been excused for cause, and emphasized that he had been required to exhaust his entire complement of peremptory challenges.

The actual trial spanned two days. The State's case rested largely on the testimony of Robert Sandifer, the alleged victim of the robbery. Sandifer identified the defendant as one of three men who threatened him with a revolver, held him up and took his money along with a case of scotch and a small amount of cash belonging to the tavern. The defense both attacked the accuracy of Sandifer's identification and attempted to establish an alibi.

The jury found defendant guilty of the robbery and further concluded that he had been armed during its commission. Defendant was sentenced to an aggregate of 10–13 years, including 6–8 years for the robbery and a consecutive 4–5 year term for being armed.

The Appellate Division, one judge dissenting, reversed the conviction. *State v. Singletary,* 156 *N. J. Super.* 303 (App. Div. 1978). In its view, the failure to excuse venireman Sheeran for cause constituted prejudicial error. The State filed an appeal as of right to this Court pursuant to *R.* 2:2–1(a)(2).

Defendant claims that the trial court's refusal to excuse venireman Sheeran for cause constituted prejudicial error in that he was deprived of his full complement of twenty

peremptory challenges. It must be emphasized that this denial of peremptory challenges is defendant's sole ground of appeal. Defendant has not alleged that the jury ultimately empanelled was other than impartial nor has he contended that his trial was less than fair. Rather, he maintains that the erroneous denial of a challenge for cause is *per se* prejudicial in any case in which a defendant is thereby compelled to exhaust his peremptories.

 Were we of the view that the trial judge had in fact erroneously deprived defendant of a peremptory challenge, his contentions in this regard would merit serious consideration by this Court. Jury selection is an integral part of the process to which every criminal defendant is entitled. Although not constitutionally required to do so, see *Brown v. State,* 62 *N. J. L.* 666 (E & A 1899), the Legislature and this Court have sought to insure that the triers of fact will be "as nearly impartial 'as the lot of humanity will admit' " by providing defense counsel with twenty peremptory challenges. *State v. Jackson,* 43 *N. J.* 148, 158 (1964), *cert.* den. *sub nom. Ravenell v. New Jersey,* 379 *U. S.* 982, 85 *S. Ct.* 690, 13 *L. Ed.* 2d 572 (1965). *See N. J. S. A.* 2A:78–7(c) ; *R.* 1:8–3(d). As such, "[t]he denial of the right of peremptory challenge is the denial of a substantial right." *Wright v. Bernstein,* 23 *N. J.* 284, 295 (1957) ; *see, e. g., State v. Jackson, supra; United States v. Allsup,* 566 *F.* 2d 68 (9th Cir. 1977) ; *United States v. Nell,* 526 *F.* 2d 1223 (5th Cir. 1976) ; *State v. Holliman,* 529 *S. W.* 2d 932 (Mo. Ct. App. 1975).

 Having carefully considered the record of the proceedings below, however, we have concluded that the trial court's refusal to excuse Sheeran did not amount to error. We have long held that trial courts are "vested with broad discretionary powers in determining the qualifications of jurors and [a judge's] exercise of discretion will ordinarily not be disturbed on appeal." *State v. Jackson, supra,* 43 *N. J.* at 160 ; *see, e. g., State v. Simmons,* 120 *N. J. L.* 85, 90 (E & A 1938). The reasons underlying this appellate defer-

ence to the assessments made by trial judges are not difficult to fathom. Decisions concerning the potential bias of prospective jurors are primarily subjective in nature. They require at bottom a judgment concerning the juror's credibility as he responds to questions designed to detect whether he is able to sit as a fair and impartial trier of fact. Consequently, such evaluations are necessarily dependent upon an observation of the juror's demeanor during the course of *voir dire* — observations which an appellate court is precluded from making.

To be sure, in certain circumstances a venireman's potential for bias is sufficiently indicated by his past experiences that a refusal to excuse for cause will necessitate a reversal. *See, e. g., State v. Jackson, supra* (failure to excuse juror who was friend of key State witness) ; *State v. Holliman, supra* (failure to excuse juror who was friend of the murder victim). *Cf. State v. Deatore,* 70 *N. J.* 100 (1976) ("close relationship" between juror and victim requires excusal for cause). In the majority of cases, however, whether or not to dismiss the challenged juror is heavily dependent upon subjective evaluations of his credibility.

Encompassed within this latter category are challenges predicated upon a juror's recent involvement in a crime similar to that with which a defendant is charged. *See State v. Grillo,* 16 *N. J.* 103 (1954). Unlike situations in which the venireman is acquainted with persons who will testify at trial, *see State v. Jackson, supra; State v. Deatore, supra,* a juror's recent criminal victimization does not always give rise to such a great risk of bias that excusal for cause must be ordered. As we emphasized in *Grillo,*

the imputation of bias to [such a juror] as a matter of law, because he once had been the victim of highway robbery is only surmise and speculation and "* * *" would be no more sensible than to impute bias to all storeowners and householders in cases of larceny or burglary."

[16 *N. J.* at 113 (quoting from *Dennis v. United States,* 339 *U. S.* 162, 167, 70 *S. Ct.* 519, 521, 94 *L. Ed.* 734, 740 (1950)]

Instead, we noted that the decision concerning excusal was dependent upon an evaluation of all the facts and circumstances surrounding the crime and the juror's ability to act impartially. *Id.* 16 *N. J.* at 113–114.

In the present case, the trial court questioned Sheeran extensively and concluded from his responses that he could, in fact, be impartial. Although a juror's professions of impartiality will not always insulate him from excusal for cause, *see, e. g., State v. Jackson, supra; State v. Deatore, supra,* they will be accorded a great deal of weight, *see, e. g., State v. Grillo, supra; State v. Jefferson,* 131 *N. J. L.* 70, 72 (E & A 1943). Inasmuch as the trial judge observed the venireman's demeanor, he was in a position to accurately assess the sincerity and credibility of such statements, and we should therefore pay due deference to his evaluation of Sheeran's qualifications.

Under these circumstances, and in light of the absence of any allegations of bias or unfairness in the trial itself, there is no need to order a new trial. Although it might well have been the wiser course to have excused venireman Sheeran for cause, the failure to do so was not so clearly an abuse of discretion as to necessitate reversal on this ground alone.

We emphasize, however, that neither Grillo nor this opinion should be read as holding that prospective jurors who were recent crime victims should not be excused for cause. Quite the contrary, a juror's involvement in a recent similar crime will often require an excusal. *See, e. g., Salazar v. State,* 562 *S. W.* 2d 480 (Tex. Crim. App. 1978) ; *Durham v. State,* 182 *Tenn.* 577, 188 *S. W.* 2d 555 (Sup. Ct. 1945). In most cases, such involvement will give rise to a substantial risk that the jury is not "entirely free from the taint of extraneous * * * influences." *Wright, supra,* 23 *N. J.* at 295 (1957). Moreover, failure to excuse such a venireman may well undermine the image of justice — a concern which we have deemed an important component of our criminal system. *See State v. Jackson, supra,* 43 *N. J.* at 160–161.

Our trial judges must understand that in most situations denials of challenges for cause predicated upon a juror's recent victimization will not be tolerated. All doubts concerning a juror's "'sense of fairness or . . . mental integrity'" should be resolved by dismissing the challenged venireman. *State v. Jackson, supra,* 43 *N. J.* at 160. "'If error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors.'" *Id.*

Defendant also contends that his custodial sentence of 10–13 years, consecutive to any period of incarceration imposed for violation of parole, is manifestly excessive. We find no mistaken exercise of discretion in the imposition of this sentence.

Accordingly, the judgment of the Appellate Division is reversed and the convictions reinstated.

JACOBS, J., concurring. After thoroughly interrogating a prospective juror on the voir dire, the trial court concluded that he was qualified to serve. Accordingly, it exercised its broad discretionary powers in refusing to discharge him for cause. It did so well knowing that if the defendant still harbored doubts as to the juror's ability to function impartially the defendant could discharge him peremptorily. The defendant did just that and as a result the juror did not participate in the trial. After a full and fair trial the defendant was found guilty of armed robbery. He now seeks a retrial though he makes no semblance of showing that the jury which convicted him was not truly an impartial one or that its verdict was in anywise unjust or not in conformity with the evidence. It appears clear to me that under these circumstances a retrial would needlessly burden the administration of justice and would grossly disserve the interests of society. See *Patterson v. State,* 239 *Ga.* 409, 238 *S. E.* 2d 2 (1977):

The conduct of the voir dire is within the discretion of the trial court, and the court's rulings are proper absent some manifest abuse

of discretion. *Welch v. State*, 237 *Ga.* 665(5), 229 *S. E.* 2d 390 (1976) ; *Gatlin v. State*, 236 *Ga.* 707(2), 225 *S. E.* 2d 224 (1976). Whether to strike a juror for cause lies within the discretion of the court. *Welch, supra* 237 *Ga.* at 671, 229 *S. E.* 2d 390. We have carefully reviewed the record and fail to find any abuse of discretion. These two allegedly biased jurors did not sit on the jury which convicted appellant, nor has he shown that he was prejudiced or harmed because he used peremptory strikes to eliminate the two challenged jurors. See *People v. Silvola*, Colo., 547 *P.* 2d 1283(9) (1976), *cert.* den. 429 *U. S.* 886, 97 *S. Ct.* 238, 50 *L. Ed.* 2d 167 (1976). [238 *S. E.* 2d at 5]

In granting the defendant Singletary's request for a new trial the Appellate Division, by a divided vote, relied heavily upon *State v. Jackson,* 43 *N. J.* 148 (1964), which is readily distinguishable. There the trial court refused to discharge a prospective juror though it appeared that he was a close friend of a principal witness for the State and that the defendant could not excuse him since he had already exhausted his peremptory challenges. As a result the juror actually served and participated in rendering the guilty verdict which produced the defendant's death sentence. In the opinion for a unanimous Court I pointed out that it would run counter to human nature to expect the juror to pass impartially on matters of credibility between his close friend and the defendant. His very presence on the jury tainted its verdict and the appearance of justice as well as its actuality cried out for the setting aside of the verdict and death sentence. Surely no time need be spent on the patent differentiations between *Jackson* and the case at hand where, after fair trial, the defendant Singletary was found guilty by an impartial jury which carried no suggestion of taint.

The Appellate Division placed reliance on *Wright v. Bernstein,* 23 *N. J.* 284 (1957), which is also readily distinguishable. There a new trial was ordered where it appeared that a juror, who had failed to disclose on the voir dire that his mother was a party to a pending lawsuit, actually participated in the trial and in the verdict for the

plaintiffs. That was an automobile accident case and the juror mistakenly thought that he was being asked whether any member of his family was engaged in similar automobile accident litigation. In fact his mother had fallen in a store and was suing its owner. I dissented from the grant of a new trial because the record established that the juror had acted honestly and impartially and there had been no showing whatever of harm or prejudice. See *Wright v. Bernstein,* 23 *N. J.* at 297–301; cf. *Meszaros v. Gransamer,* 23 *N. J.* 179, 184 (1957). Though the dissenting opinion was filed over two decades ago, time and experience have simply served to reinforce its thesis. In view of the larger implications in the ready granting of retrials, I take the liberty of now repeating its concluding paragraph in full:

The uncontroverted circumstances establish that [the juror's] statement, though inadvertently inaccurate, was not actually harmful or prejudicial and in nowise impaired the complete fairness of the trial nor the justness of the verdict. If the controlling test of substantial justice is to have any significant meaning, then the course which should be taken in the instant matter seems reasonably clear. See *Meszaros v. Gransamer, supra* [23 *N. J.* at 189–190]:

"Throughout history the ever present goal has been to attain a better system of justice which affords to every person a fair, inexpensive and speedy trial, unshackled by needless technicality and formalism. This goal is frustrated by every new trial for a procedural error which did not impair the fairness of the first trial nor the justness of the original verdict. In this day there should be ready recognition of the absence of justification for such new trial except in the unusual instance where it is really essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle. It will not suffice that we have solemnly set forth in a formal practice rule (*R. R.* 1:5–3(*b*)) that a new trial will not be granted 'unless a denial of the relief sought appears to the court to be inconsistent with substantial justice'; as Professor Sunderland properly pointed out almost 30 years ago, we must go further and always interpret and apply the rule with sympathetic understanding that trial procedure is not the end in itself but is merely the vehicle for attaining justice:

'The problem of prejudicial error is a problem in professional psychology. No rules can be framed which will solve it, for rules can only be drawn in general terms, and it is in the interpretation of the rules that the difficulty comes * * * The only permanent and

effective cure for technicality in this respect is a better conception of the purpose of all procedure. In England in the year 1924 not a single case from the King's Bench Division was reversed for error in admitting or excluding evidence. That simple fact explains why the intricacies of practice no longer annoy the English lawyer. And it explains the success of the whole judicial establishment. Procedure has become a practical means to an end. Its rules are no more exacting than efficiency requires. * * * Every judgment which is reversed merely because obtained contrary to rules, shows a failure of the courts to serve the main purpose of their existence.' *Sunderland, 'The Problem of Appellate Review,'* 5 *Texas L. Rev.* 126, 146 (1927), as quoted in 7 *Moore, supra,* at 1002." [23 *N. J.* at 300–301]

I join Justice PASHMAN's opinion and vote to reinstate the defendant Singletary's conviction.

Justice SCHREIBER joins in this opinion.

CLIFFORD, J. dissenting. Defendant was charged with armed robbery. Seventeen days before Kenneth J. Sheeran's being called to serve as a juror in this case he was "personally involved" in an armed robbery of the New York bank where he was employed.

In addition, eight months before trial Sheeran's sister-in-law was murdered.

My view quite simply is that had this venireman sat as a juror, the deck would have been stacked against defendant or at the least — and equally to be avoided — would have given the appearance of being stacked, and that under the circumstances the trial court's disallowance of a challenge for cause amounted to a mistaken exercise of discretion calling for a reversal of the conviction. The trial court's ruling, apparently made in reliance upon Sheeran's stated belief that he could nevertheless remain impartial, required defense counsel to use one of his two remaining peremptory challenges to excuse this venireman. Shortly thereafter defendant exhausted his allotment of twenty peremptory challenges (*N. J. S. A.* 2A:78–7(c), *R.* 1:8–3(d)) before the jury was empanelled. His compelled use of a peremptory

challenge to achieve what should have followed from his challenge for cause deprived him of one of his allotted peremptories. He was entitled to twenty and was in effect accorded but nineteen. That, in a word, is the rub.

The case poses two issues: first, whether the trial court's refusal to excuse juror Sheeran for cause constituted an abuse of discretion under these circumstances, namely, where after eighteen peremptory challenges had been used, defendant contended that the venireman's victimization by an armed robber a scant two and a half weeks before being called to decide an armed robbery case disqualified the victim as a juror; and second, if the trial court's discretion in that regard was mistakenly exercised, whether the reduction in the number of peremptory challenges resulting from the erroneous denial of a challenge for cause entitles defendant to a new trial.

As to the first question, the majority properly points out that in *State v. Grillo,* 16 *N. J.* 103 ,(1954), this Court found no prejudice in allowing a juror who eleven months before trial had been held up at gunpoint to sit in an armed robbery felony murder prosecution. Justice Wachenfeld's dissenting view did not carry the day:

[O]ne who has been assaulted, threatened with a deadly weapon and robbed is not likely to forget or forgive nor to treat lightly or even fairly similar conduct in others. This is a normal human reaction following customary behavior, expected and anticipated by the background of experience.

[16 *N. J.* at 116.]

While I happen to agree entirely with Justice Wachenfeld's position, we can, and for today's purposes probably should, leave *Grillo's* holding unimpaired and simply distinguish that case on the ground that here the two crimes were both more similar in nature and more closely related in time.

Notwithstanding *Grillo,* however, more recent cases, likewise readily distinguishable both on their facts and on their holdings, point unmistakably to the course we should take in

this case. From *State v. Jackson,* 43 *N. J.* 148 (1964), and *State v. Deatore,* 70 *N. J.* 100 (1976), both discussed in some detail in the opinions of the court below, *State v. Singletary,* 156 *N. J. Super.* 303 (App. Div. 1978), we can tease out a common theme, a broad guiding principle, to the effect that "jurors must be carefully selected with an eye towards their ability to determine the controverted issues fairly and impartially" and "the trial court should see to it that the jury is as nearly impartial 'as the lot of humanity will admit.'" *State v. Jackson, supra,* 43 *N. J.* at 157–58; *accord, State v. Deatore,* 70 *N. J.* at 105–06. Nor does the obvious differentiating feature of *Jackson* and *Deatore,* wherein the tainted juror sat whereas here he was not part of the final jury, serve to dilute the force of the stated underlying, guiding principle.

Furthermore, quite apart from any prejudice in fact visited upon a defendant by disallowing his challenge for cause is the effect of such a ruling on the appearance of justice. As the Court observed in *Jackson,* in sustaining the challenge for cause in that case:

[I] should have been honored, if for no other reason than to insure [the defendant's] confidence in the basic fairness of the trial. In any sound judicial system it is essential not only that justice be done but that it appear to be done.

[43 *N. J.* at 160–61.]

Thus in my view *Jackson* dictates that the defendant must have the benefit of any doubt where a juror's impartiality is brought into question by defendant's challenge for cause. Given venireman Sheeran's experience, including not only his recent victimization at the hands of a bank robber but also the murder of his sister-in-law, it was the disregard of that principle which led the trial court into error.

But, one might ask, what harm was done here? Even if the trial court was wrong in not granting a challenge for cause, Sheeran did not sit as a juror because defendant exercised a peremptory challenge, so the jury that eventually

returned a verdict was untainted. How has defendant been prejudiced?

There is no New Jersey case which supplies the answer. It lies, I think, for the most part in the importance one attaches to the attainment of a fair and impartial jury and to the process available to achieve that end. I tend to view that process (without for a moment suggesting that any member of this Court feels otherwise) as considerably more than a procedural formality. The right to be tried by a fair and impartial jury is a "fundamental" one to be "jealously guarded," *Wright v. Bernstein,* 23 *N. J.* 284, 295 (1957). Our rules are carefully, albeit imperfectly, designed to assure the empanelling of a jury that to the greatest extent possible will reach its verdict on the evidence with absolute fairness and complete impartiality. Hence in a criminal case such as this one defendant is afforded twenty opportunities to excuse any venireman peremptorily — for a good reason, a bad reason, or no reason at all. See *id.* at 293. Any diminution of or infringement upon that legislatively granted opportunity deprives defendant of as fair a trial as our rules permit. Defendant's argument here, with which I agree, is that his claim of error derives from his due process guarantees and from our standards of fair trial, whereas his entitlement to relief springs from the legislative grant of twenty peremptory challenges and his right thereto, which he was denied.

I would affirm the Appellate Division's reversal of the conviction and remand for a new trial.

HANDLER, J., dissenting. Defendant was indicted, convicted by a jury and sentenced for committing an armed robbery of an employee of a Paterson tavern. When brought to trial, he endeavored through his attorney to secure a jury which would be, to his satisfaction, as fair and impartial as possible within the limits of the rules governing the selection of juries in criminal trials. His rights in this respect, however, were severely curtailed when, close to the end of the *voir dire* procedure, the trial judge turned down defendant's

reasonable request to excuse for cause a prospective juror who had less than three weeks before been victimized by an armed robber; as a result, defendant was compelled to eliminate that juror by the use of his next-to-last peremptory challenge and, with the exercise of his last peremptory, to accept the jury as then empanelled. Under these circumstances, I would reverse the conviction and allow defendant to be retried.

It is important to recite in some detail the manner in which the jury which convicted defendant came to be empaneled. Defendant Singletary and another were indicted for the armed robbery on October 21, 1975. Juror selection at Singletary's separate trial occurred over a two day period, on January 23 and 26, 1976. During the course of the *voir dire* examination of prospective jurors, the court, apparently on its own motion, excused for cause five prospective jurors, who either knew the owner of the tavern that had been robbed or were acquainted with witnesses for the State. Questioning during the *voir dire* also revealed that five veniremen had been crime victims or had close relatives who had been victimized by criminals. Defendant exercised peremptory challenges against four of these.

After defendant had already exercised eighteen of his allotted twenty peremptory challenges a prospective juror by the name of Sheeran was called. The *voir dire* examination of Sheeran unfolded as follows:

Q. Have you been the victim of a crime?
A. Yes.
Q. Will you tell me when, and the nature?
A. I work for a bank in New York City and it was held up on January 9th.
Q. January 9th of this year?
A. Of this year, yes, sir.
Q. Do you feel that that particular event, having been so recent, would have any effect on your ability to sit as a fair and impartial juror in this case?
A. No, I do not.
Q. Has any other member of your family been the victim of a crime?

A. My sister-in-law was murdered last year, May 22nd, 1975.
Q. How about that particular event, do you feel that the existence of that event would affect your ability to sit as a fair and impartial juror?
A. No, it would not.

\* \* \* \* \* \* \* \*

There then followed a dozen standard, general questions unrelated to these crimes to which the answers, taken at face value, acknowledged no prejudice or bias on the part of Sheeran.

With the response to the last question, the State pronounced the jury satisfactory. Defense counsel immediately requested to be heard at side bar, *i. e.,* beyond the jury's hearing. An off the record discussion ensued, during which the court indicated that it would not grant defendant's challenge for cause. (We note parenthetically that such a discussion should *not* have been off the record. *R.* 1:2–2; *State v. Green,* 129 *N. J. Super.* 157, 166 (App. Div. 1974)). Apparently at the instigation of defense counsel, the court then inquired whether Sheeran was an actual victim or merely a spectator at the robbery seventeen days before:

Q. Mr. Sheeran, in connection with the bank robbery, which you've mentioned which occurred just a few weeks ago, were you actually involved in that particular robbery—
A. Yes.
Q. (continuing) Or was it just a robbery in your particular branch?
A. No, I was involved in it.
Q. Was it an armed robbery?
A. Yes, it was.
Q. And do you feel that that particular circumstance, considering that this case involves a charge of robbery and being armed during the commission of the robbery, that that particular event so recently would not affect your ability in any way to sit on this case?
A. No, I do not.

The juror was not excused for cause by the court and defense counsel exercised his nineteenth peremptory challenge to remove Sheeran. The selection of the jury then concluded

rapidly. The next three veniremen were excused by peremptory challenge, two by the State and one — his last — by defendant. The court then initiated and held another conference (which was not, but should have been, on the record, *id.*) and, after questioning of the next summoned juror, both sides pronounced the jury satisfactory and the jurors were sworn. Thereafter, defense counsel reiterated his objection that Sheeran should have been excused for cause and noted that he had been required to exercise all twenty of his peremptory challenges. This objection was not acted upon by the court. Following the jury trial defendant was found guilty of the charge.

## I

With respect to whether there was cause for the trial court to excuse the controversial juror, I conclude, contrary to the majority, that, under the circumstances presented, there uncontestably was. The conclusion is bottomed upon the singular importance of a defendant's right to a trial by a fair and impartial jury. "The jury is an integral part of the court for the administration of justice * * * The parties to [an] action are entitled to have each of the jurors who hears the case impartial, unprejudiced and free from improper influence." *State v. Simon,* 79 *N. J.* 191, 199 (1979), quoting from *Wright v. Bernstein,* 23 *N. J.* 284, 294–295 (1957) and citing *Panko v. Flintkote,* 7 *N. J.* 55, 61 (1951). It has been repeatedly stressed that the legitimacy of our system of criminal jurisprudence depends on the fairness and integrity of the jury selection process. "Jurors must be [carefully] selected with an eye toward[s] 'their ability to determine the controverted issues fairly and impartially; * * * [and] the trial court should see to it that the jury is as nearly impartial "as the lot of humanity will admit" ' ". *State v. Deatore,* 70 *N. J.* 100, 105–106 (1976); *State v. Jackson,* 43 *N. J.* 148, 157–158 (1964),

cert. den. *sub nom. Ravenell v. New Jersey,* 379 *U. S.* 982, 85 *S. Ct.* 690, 13 *L. Ed.* 2d 572 (1965).

The majority acknowledges, grudgingly, that "it might well have been the wiser course to have excused \* \* \* [the juror] for cause", but concludes that the "failure to do so" would not "necessitate [a] reversal on this ground alone". *Ante* at 64. The question as it comes to us, however, is not whether it would have been strategically adroit for the trial court to have avoided the risk of reversal by excusing the troublesome juror. The circumstances of this case clearly spelled out reasons to believe that the juror could not likely have reacted neutrally to the charge being tried and he should have been excused by the trial court not as a matter of cunning but for good cause. The majority's ruling that the juror need not have been excused for cause as a matter of trial court discretion is based not merely upon a different perception of undisputed evidence. It seems to represent an unwarranted retreat from the sound approach reflected in earlier decisions that found juror taint under circumstances no more compelling than those presented here. See *State v. Jackson, supra* (holding challenge for cause should have been granted against juror who was friend of state witness) ; *Wright v. Bernstein, supra* (reversible error where juror in accident case failed to disclose his mother was plaintiff in unrelated personal injury case) ; *cf. State v. Deatore, supra* (reversible error where court refused to question prospective juror concerning acquaintance with victim in case being tried).

In support of its position, the majority attempts to draw a distinction between jurors potentially biased because of a personal relationship with persons involved in the case and jurors, as here, who have had some direct or indirect personal experience as the victim of a recent crime similar to that being tried. The Court would impute prejudice in the first category of jurors but not the latter. *Ante* at 64. Many cases, however, have recognized the propriety of a challenge

for cause where there is reason to question a juror's impartiality because of direct or indirect involvement as, or with, the victim of a crime; *e. g., Salazar v. State,* 562 *S. W.* 2d 480 (Tex. Cr. App. 1978) (juror where defendant was charged with indecency with child had witnessed sexual assault on own daughter); *Pugh v. State,* 376 *S. W.* 2d 760 (Tex. Cr. App. 1964) (juror in drunk driving trial had a best friend who was killed by a drunk driver a few days before); *People v. DeHaven,* 321 *Mich.* 327, 32 *N. W.* 2d 468 (Sup. Ct. 1948) (jurors in statutory rape trial had relatives who had been convicted of same offense); *Durham v. State,* 182 *Tenn.* 577, 188 *S. W.* 2d 555 (Sup. Ct. 1945) (juror in rape case had been prosecuting witness in assault with intent to rape case three years before); *State v. Holliman,* 529 *S. W.* 2d 932 (Mo. Ct. App. 1975) (juror was friend of victim in murder trial); *Bailey v. Keaton,* 104 *Ohio App.* 223, 148 *N. E.* 2d 120 (Ct. App. 1957) (juror in bastardy trial had been plaintiff in prior bastardy case); *United States v. Poole,* 450 *F.* 2d 1082 (3 Cir. 1971) (observing it would be difficult to hold a robbery victim capable of objectivity in armed robbery case (*dictum*)); *cf. Wright v. Bernstein, supra.* I know of no primer on psychology or human behavior that enables this Court to differentiate as to potential for bias between jurors standing in some relationship to one side of a criminal prosecution and those who have suffered recently at the hands of a criminal.

In this criminal prosecution for armed robbery, the trial judge was asked to excuse a juror who only seventeen days before had been involved in the same type of crime. Additionally, it was revealed that the juror's sister-in-law had been murdered only eight months before. The majority, nevertheless, appears to discount the significance of what undoubtedly was a trying ordeal for the juror in having been personally involved in an armed robbery and accords no weight to the added, aggravating fact that the juror's sister-in-law had been recently murdered. Since the majority itself concedes that a juror may be potentially biased because of

"past experience", *Ante* at 63, it is hard to reconcile its assertion that an imputation of bias in this case would rest on no more than " 'surmise and speculation' ", *Ante* at 63. It is difficult to imagine recent and vivid "past experiences" having a more obvious prejudicial impact upon a juror sitting through a trial of an armed robbery charge than those here related by Sheeran in the course of the *voir dire* examination.

The majority observes that "[t]rial courts are 'vested with broad discretionary powers in determining the qualifications of jurors and [a judge's] exercise of discretion will ordinarily not be disturbed on appeal' ". *Ante* at 62. Simply to characterize the ruling as discretionary, however, begs analysis. One may agree that a reviewing court should give substantial weight to a trial judge's ability to observe a venireman's demeanor and evaluate his credibility. See *State v. Mathis,* 52 *N. J.* 238, 248 (1964), rev'd on other grounds 403 *U. S.* 946, 91 *S. Ct.* 2277, 29 *L. Ed.* 2d 855 (1971). Nevertheless, where the potential for prejudice is sufficiently blatant, a court on review should not hesitate to intervene, assess the *voir dire* record independently, and, where necessary, hold that a challenge for cause should have been granted as a matter of law. *Cf. Irvin v. Dowd,* 366 *U. S.* 717, 723, 81 *S. Ct.* 1639, 1643, 6 *L. Ed.* 2d 751, 756 (1961); *State v. Van Duyne,* 43 *N. J.* 369, 386 (1964), *cert.* den. 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed.* 2d 279 (1965).

We know that psychological conditioning may act subconsciously to impede a juror's ability to reach a verdict solely upon the evidence before him. See *State v. Simon, supra,* 79 *N. J.* at 199–202. Only an exceedingly sanguine view of human nature would accommodate the notion that a recent robbery victim could divorce from his or her mind the emotional residuum of such a personal trauma and be capable of objectivity in the trial of an armed robbery prosecution. *Cf. United States v. Poole, supra,* 450 *F.* 2d at 1084. There is an undeniable ring of truth in Justice Wachenfeld's dissent in *State v. Grillo,* 16 *N. J.* 103, 116 (1954):

One who has been assaulted, threatened with a deadly weapon and robbed is not likely to forget or forgive nor to treat lightly or even fairly similar conduct in others. This is a normal human reaction following customary behavior, expected and anticipated by the background of experience.

At any rate what is critical is not actual prejudice on the part of the prospective juror. In considering a challenge for cause the question is not whether a prospective juror's prior experience will, in fact, necessarily or inevitably prejudice him or her but, rather, whether there is a strong likelihood or probability grounded in human experience that such an individual will be, or indeed, will appear to be, prejudiced. *Cf. State v. Jackson, supra.* That substantial likelihood of prejudice is generated by the facts in this case. It is not blunted appreciably by the juror's own, apparently *bona fide* profession of impartiality. As the United States Supreme Court noted in *Irvin v. Dowd, supra,* a juror may be sincere in insisting he will be fair and impartial. Yet, the "psychological impact requiring such a declaration before one's fellows is often its father". 366 *U. S.* at 728, 81 *S. Ct.* at 1645, 6 *L. Ed.* 2d at 759. This Court, too, has recognized that in some circumstances, "sincere [though a] disclaimer [of prejudice] may be 'it runs counter to human nature'" and "[flies] 'in the face of the plain reality of the courtroom'". *State v. Deatore, supra,* 70 *N. J.* at 105–106; *State v. Jackson, supra,* 43 *N. J.* at 160. Empirical research tends to corroborate the belief that prospective jurors often subconsciously as well as consciously attempt to conceal their biases on *voir dire.* See Broeder, "Voir Dire Examinations: An Empirical Study", 38 *So. Calif. L. Rev.* 503 (1965).

I would add that the trial court has a direct responsibility to conduct a proper and adequate examination of prospective jurors to assure the empanelling of a fair and impartial jury. *R.* 1:8–3(a); *State v. Manley,* 54 *N. J.* 259, 281–283 (1969); *State v. Morales,* 116 *N. J. Super.* 538, 541–542 (App. Div. 1971), certif. den. 60 *N. J.* 140 (1972). The trial court here did not see fit in discharging this responsi-

bility to question Sheeran further as to the relevant circumstances surrounding the criminal incident which he related only after prodding by defense counsel. If there were any lingering doubts as to the capacity of these prior criminal events to leave a prejudicial imprint on the juror's state of mind, notwithstanding his professed belief that he could try the case without bias, those doubts should have been dispelled by additional exploratory examination. See *State v. Deatore, supra; cf. State v. Sims,* 140 *N. J. Super.* 164, 172–173 (App. Div. 1976). Without such clarifying inquiry, the disclosures by the juror of recent crimes, which undoubtedly touched him, constituted sufficient cause for his disqualification to serve as a juror in this criminal prosecution.

## II

The State argues that, assuming the denial of the challenge for cause was improper, the error was harmless because Sheeran never actually sat on the jury. Justice Jacobs suggests in his concurrence that the defendant is not entitled to a new trial absent an express showing that "the jury which convicted him was not truly an impartial one or that its verdict was in anywise unjust or not in conformity with the evidence". *Ante* at 65. I do not think that is a sufficient answer to defendant's charge that he was denied the opportunity under the circumstances of this case to select a fair and impartial jury to his satisfaction as contemplated by our criminal trial procedures. The majority indicates, without elaboration, that if there were error in rejecting the challenge for cause, the resulting encroachment on defendant's full complement of peremptories "would merit serious consideration by this Court". *Ante* at 62.

The importance of the peremptory challenge in the process of selecting a fair and impartial jury cannot be ignored. We squarely recognized its significance in *Wright v. Bernstein* where we stated, "The denial of the right of peremptory challenge is the denial of a substantial right." *Id.* 23 *N. J.* at 295.

Although peremptory challenges are not constitutionally mandated, *Swain v. Alabama,* 380 *U. S.* 202, 219, 85 *S. Ct.* 824, 835, 13 *L. Ed.* 2d 759, 772 (1965); *Stilson v. United States,* 250 *U. S.* 583, 586, 40 *S. Ct.* 28, 30, 63 *L. Ed.* 1154, 1156 (1919); *Brown v. State,* 62 *N. J. L.* 666, 678 (E. & A. 1899), we have acknowledged their importance in this State through legislation and Court rule. *N. J. S. A.* 2A:78–7.(c); *R.* 1:8–3(d). Our laws and rules are designed, albeit imperfectly, to assure the empanelling of a jury that, to the greatest extent possible and the reasonable satisfaction of the parties, will reach its verdict solely on the evidence with complete fairness and impartiality.

The utility of peremptory challenges as one of the tools of jury selection has been strongly emphasized by the United States Supreme Court in *Swain v. Alabama, supra.* There, the Court pointed out that peremptory challenges have been an integral aspect of criminal trial procedure for over six hundred years and continue to be universally employed in every state in this country. *Id.,* 380 *U. S.* at 212–219, 85 *S. Ct.* at 831–835, 13 *L. Ed.* 2d at 768–772. Courts have repeatedly held that the improper denial of a challenge for cause which has the effect of depriving a defendant of his full entitlement of peremptories requires a reversal. See, *e. g., United States v. Allsup,* 566 *F.* 2d 68 (9 Cir. 1977); *United States v. Nell,* 526 *F.* 2d 1223 (5 Cir. 1976); *Wasko v. Frankel,* 116 *Ariz.* 288, 569 *P.* 2d 230 (Sup. Ct. 1977); *State v. Moore,* 562 *P.* 2d 629 .(Utah Sup. Ct. 1977); *Breeden v. Commonwealth,* 217 *Va.* 297, 227 *S. E.* 2d 734 (Sup. Ct. 1976); *State v. West, W. Va.,* 200 *S. E.* 2d 859 (Sup. Ct. 1973); *State v. Land,* 478 *S. W.* 2d 290 (Mo. Sup. Ct. 1972).

A view requiring a showing of actual prejudice in a case such as this misapprehends the functional role of peremptory challenges in assuring the selection of a proper jury and misconceives the purpose for which such challenges are intended. The technique of the peremptory challenge recognizes that

the evaluation of jurors with respect to fairness and impartiality can never be sure, precise or infallible. It therefore factors into the jury selection process the decisions of counsel, which can be exercised from the vantage point of the client's interest independently of the court's judgment and control. *Swain v. Alabama, supra,* 380 *U. S.* at 220, 85 *S. Ct.* at 836, 13 *L. Ed.* 2d at 772; *State v. Smith,* 55 *N. J.* 476, 483, *cert.* den. 400 *U. S.* 949, 91 *S. Ct.* 232, 27 *L. Ed.* 2d 256 (1970); *Wright v. Bernstein, supra,* 23 *N. J.* at 293. Since the trial court has the primary and independent responsibility to conduct the examination of prospective jurors and ferret out latent as well as obvious prejudice and to excuse any juror so tainted, the peremptory challenge by counsel serves as a complementary device used in conjunction with the court to produce a jury reasonably suited to try the particular case.

In the context of this case, I cannot subscribe to the position that the wrongful infringement on the right of peremptory challenge was harmless and does not require reversal absent some further showing of actual prejudice. Justice Jacobs in concurrence correctly notes that in two of our leading jury selection cases, *Wright v. Bernstein, supra* and *State v. Jackson, supra,* the controversial juror, unlike Sheeran, actually sat on the jury. That distinction, though significant, is not determinative in all cases. In *State v. Deatore, supra,* defense counsel in an armed robbery trial was forced to excuse from the jury panel by the exercise of a peremptory challenge a juror who should have been rejected for cause because she was acquainted with the victim of the armed robbery. It was held, with the unanimous agreement of every member of the Court on this point, that, since the trial court failed to examine the juror more searchingly as to potential for bias, there was an improper intrusion on the right of peremptory challenge which constituted "fundamental error" requiring a reversal. *Id.,* 70 *N. J.* at 105.

We have consistently recognized that certain errors "'go so plainly to the integrity of the proceedings that * * * a new

trial is the just course' ". *State v. Simon, supra,* 79 *N. J.* at 205; *State v. Macon,* 57 *N. J.* 325, 338 (1971); *State v. Harper,* 128 *N. J. Super.* 270, 278 (App. Div.), certif. den. 65 *N. J.* 574 (1974); see *Meszaros v. Gransamer,* 23 *N. J.* 179, 191–192 (1957) (Weintraub, C. J., concurring). This Court has noted that "the rule of harmless error should be summoned only with great caution in dealing with the breach of fundamental procedural safeguards 'designed to assure a fair trial' ". *State v. Simon, supra,* 79 *N. J.* at 206. Also, Traynor, *The Riddle of Harmless Error* 81 (1970); Cameron & Osborne, "When Harmless Error Isn't Harmless", 1971 *Law & The Soc. Order* 23, 40; see *State v. Jackson, supra; cf. State v. Deatore, supra.* The peremptory challenge as a procedural safeguard is an important component in the proper trial of a criminal case. It ranks in stature with the right to challenge for cause. *Cf. State v. Thompson,* 142 *N. J. Super.* 274, 280 (App. Div. 1976); its exercise can, and does, affect the outcome of jury trials, Zeisel and Diamond, "The Effect of Peremptory Challenges on Jury and Verdict: An Experiment in a Federal District Court", 30 *Stan. L. Rev.* 491 (1978) and unless it is allowed to be " 'exercised with full freedom * * * it fails of its full purpose' ". *Swain v. Alabama, supra,* 380 *U. S.* at 219, 85 *S. Ct.* at 835, 13 *L. Ed.* 2d at 772; *Lewis v. United States,* 146 *U. S.* 370, 378, 13 *S. Ct.* 136, 139, 36 *L. Ed.* 1011, 1014 (1892).

In the circumstances before us, the denial to defendant of the full range of choice accorded by the allowance of the right to challenge jurors peremptorily constituted reversible error. In reaching this conclusion, I share the concern expressed by Justice Jacobs with respect to the speedy and efficient administration of justice, *Ante* at 67–68, and I endorse wholeheartedly his admonition that a judicial trial is not a sporting contest and that new trials are not to be granted for harmless procedural violations. See *Wright v. Bernstein, supra,* 23 *N. J.* at 297 (Jacobs, J., dissenting). The violation in this case, however, was not trivial. Defendant

did not engage in peremptory challenges as a matter of "gamesmanship" or as a tactical ploy to engineer a reversal. *Cf. State v. Mathis,* 47 *N. J.* 455, 466–468 (1966) ; *State v. Harper, supra,* 128 *N. J. Super.* at 276–278; *Wright v. Bernstein, supra,* 23 *N. J.* at 295. He had already exercised in a careful and conscientious manner eighteen of his twenty allotted peremptories before Sheeran was called to the jury box. Although "a peremptory challenge can rest on a good reason, a bad reason, or no reason at all", *id.* at 293; see, *Swain v. Alabama, supra,* 380 *U. S.* at 219–222, 85 *S. Ct.* at 835–837, 13 *L. Ed.* 2d at 772–773, it is clear that in this case defendant was not frivolous in exercising his peremptories. He had excused several jurors because of evident potential for prejudice as a result of their involvement as victims of crime and had acquiesced in the court's direct excusal for cause of other jurors possibly biased by virtue of a relationship with law enforcement personnel. It was obvious that defendant sought to participate fully in the jury *voir dire* and was bent on the selection of jurors to his satisfaction to the full extent permitted by the rules. After Sheeran's examination, defendant immediately and with complete justification requested a challenge for cause and promptly protested its denial. That denial, coming as it did at the tail-end of the jury selection procedure, left defendant with almost no flexibility in reassessing jurors previously summoned from the standpoint of their comparative eligibility to remain on the panel or to be replaced from the pool of prospective jurors. Defendant was unfairly forced to expend a peremptory challenge and excuse Sheeran and almost immediately thereafter dissipated his last challenge, exhausting all options.

Under the circumstances the obvious and fundamental error committed by the trial court ought not be passed off. I would affirm the Appellate Division, reversing the conviction and remanding for a new trial.

The Chief Justice and Justice CLIFFORD join in this dissent.

*For reversal*—Justices MOUNTAIN, JACOBS, PASHMAN and SCHREIBER—4.

*For affirmance*—Chief Justice HUGHES and Justices CLIFFORD and HANDLER—3.