**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0412-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMBER BROOKS,

    Defendant-Appellant.

_____

Submitted October 31, 2019 – Decided December 10, 2019

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-12-3025.

Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Amber Brooks was convicted of a lesser-included offense,[1] second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and fourth-degree aggravated assault by pointing a firearm (Jennifer Prophet),[2] N.J.S.A. 2C:12-1(b)(4). She was acquitted of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and first-degree attempted murder (Jennifer), N.J.S.A. 2C:11-3 and 2C:5-1. An earlier trial had resulted in a deadlocked jury, except for the not guilty verdict rendered on the charge of first-degree attempted murder of another person, Nelson Long. Prior to this trial, the second, the State dismissed the charge of first-degree attempted murder of a third person, Eugene Prophet. On March 18, 2016, the trial judge sentenced defendant to nine years imprisonment on the manslaughter offense, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. A concurrent five-year term with thirty-six months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6, was to be served on the unlawful possession of a handgun. The judge also imposed a consecutive parole-

---

[1] The indictment originally charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2).

[2] Because several members of the Prophet family are involved, they will be referred to only by their first names. No disrespect is intended by the usage.

ineligible Graves Act eighteen-month sentence on the aggravated assault. In the aggregate, the judge sentenced defendant to ten and one-half years. We affirm.

We draw the facts from the trial record. On February 3, 2013, Jennifer, her uncle Eugene, and Long were looking for defendant because they suspected her of having burglarized the apartment occupied by Jennifer, Crystal Prophet, and Crystal's daughter, Nyasia Prophet. They encountered defendant on the street and confronted her.

The incident was captured on surveillance video from a nearby commercial establishment and shown at trial. Defendant is seen pointing a gun in Jennifer's face. One of defendant's companions takes the gun away. Defendant and her friends then cross the street, but defendant grabs the gun and fires in Jennifer's direction, striking a person leaving a nearby restaurant. Having been shot twice, Michael Brown fell to the ground, mortally wounded.

Eugene and Jennifer testified at the trial; both described seeing defendant shoot into the crowd. While at the police station being interviewed about the incident, Eugene selected defendant's photograph from an array. Eugene wrote on the photo identification form, "Amber killed a person last night."

After defendant was taken into custody, Nyasia received two phone calls from a cousin who was incarcerated in the same county jail as defendant. On

3

both occasions, the cousin put defendant on the phone. Defendant then asked Nyasia to explain why her family was planning to testify against her since none of them were hurt, and asked her to name those who would be appearing at trial. Those recorded calls were also played to the jury.

After the jury was selected but before it was sworn, defense counsel notified the trial judge that a juror overheard the family discussing the matter in the hallway. Accordingly, the judge and the juror engaged in the following exchange on the record:

> THE COURT: [W]hile you were waiting to come into the courtroom, did you hear or see anything outside in the hallway that might affect your ability to remain impartial in this case?
>
> JUROR NUMBER 5: No.
>
> THE COURT: At any point in time were you seated on a bench near anyone else?
>
> JUROR NUMBER 5: I was.
>
> THE COURT: And you didn't hear anything said or done by anybody that would affect your ability to remain fair or impartial?
>
> JUROR NUMBER 5: No.
>
> THE COURT: Anything that you – you hesitated for a second. Is there anything that –

4

JUROR NUMBER 5: Well, I mean I did hear what the conversation was about, as soon as I did I got up.

THE COURT: Tell me what you heard . . . .

JUROR NUMBER 5: Just that the defendant's, the defendant's family members, and, you know, they didn't know whether, you know, she did it or what happened that day.

THE COURT: All right. Did you have any conversation with any of your fellow jurors about what you heard?

JUROR NUMBER 5: No. This is the first it has come up.

THE COURT: Okay. And tell me as best you can, exactly what you think you heard?

JUROR NUMBER 5: Uhmm, well, they were saying, uhmm, uhmm, again, they were basically saying, you know, they weren't sure whether she did it or what happened that day, or what. And I wasn't really paying attention, but when I realized what they were talking about I walked away.

THE COURT: You got up and walked away?

JUROR NUMBER 5: So I don't have a good recollection of exactly what was said.

THE COURT: All right. [Juror Number 5], I'm going to ask you not to discuss the fact that we had this conversation with your fellow jurors. If at any point in time you recollect further about what took place in the hallway, I want you to let one of my officers know that so that we can talk again. All right. Thank you so much.

5

Would you join your colleagues in the jury room. All right.

(The juror exits the courtroom.)

The judge denied defendant's request to recuse the juror for cause, concluding that the juror was not tainted, and had "not been exposed to extraneous information or an outside influence that in fact could possibly impinge on his impartiality." The judge did not respond to counsel's request that jury selection be reopened so that she could exercise a peremptory challenge and excuse Juror Number 5.

Mid-trial, defendant's counsel requested the court adjourn the matter so she could produce a witness, Tazmere Montague, who had given favorable evidence during the first trial. The trial was carried from a Thursday to a Tuesday for that purpose. Montague did not appear, although he had spoken to counsel and advised he was out of state attending to a family member's medical emergency but would appear the following day. That Wednesday, the witness failed to appear and did not answer his phone when either counsel or the judge called. The judge refused counsel's request for a further adjournment.

Defendant, who was twenty-one when sentenced, had a juvenile record. It included adjudications for simple assault, burglary, conspiracy to commit

robbery, criminal trespass, drug offenses, and various probation violations as well as dismissed charges.

Now on appeal, defendant raises the following points:

POINT I
THE TRIAL JUDGE DENIED DEFENDANT A FAIR TRIAL BY REFUSING TO STRIKE A JUROR FOR CAUSE AND UNDULY LIMITING HER RIGHT TO PEREMPTORILY CHALLENGE THAT JUROR WHEN IT BECAME CLEAR THAT THE JUROR HAD BEEN EXPOSED TO STATEMENTS BY DEFENDANT'S FAMILY MEMBER[S] THAT MIGHT SUGGEST [THEY] BELIEVED DEFENDANT WAS GUILTY OF THE CRIME. U.S. CONST. AMENDS. V, VI AND XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9 AND 10.

POINT II
THE TRIAL COURT ERRED IN ALLOWING THE JURY TO HEAR AND READ EUGENE PROPHET'S OPINION TESTIMONY THAT THE DEFENDANT WAS GUILTY OF SOME SORT OF HOMICIDE. THIS INVADED THE FACT-FINDING PROVINCE OF THE JURY. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART 1, PARS. 1, 9, 10.

POINT III
THE COURT'S REFUSAL TO GRANT THE DEFENSE AN ADJOURNMENT TO OBTAIN A CRITICAL WITNESS WAS A DENIAL OF AMBER'S RIGHT TO PRESENT A DEFENSE. U.S. CONST. AMENDS. V, VI AND XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9 AND 10.

POINT IV

THE POINTING CONVICTION WAS FATALLY FLAWED BECAUSE THE TRIAL COURT FAILED TO ISSUE A UNANIMITY INSTRUCTION WITH RESPECT TO WHAT ACTIONS FORMED THE BASIS FOR THE CONVICTION, AND FAILED TO PROVIDE THE JURY WITH A SPECIAL INTERROGATORY REGARDING THE ACTIONS FORMING THE BASIS FOR ITS FINDING. THE CONVICTION UNDER THAT COUNT, THEREFORE, MUST BE REVERSED. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, PARS. 1 AND 9.

POINT V

EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED THE DEFENDANT DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).

POINT VI

THE COURT IMPOSED AN EXCESSIVE AND ILLEGAL SENTENCE AFTER IMPROPERLY WEIGHING THE AGGRAVATING AND MITIGATING FACTORS, AS WELL AS IRRELEVANT INFORMATION, AND IMPROPERLY IMPOSING A CONSECUTIVE SENTENCE. U.S. CONST. AMEND XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9, 10 AND 11.

A. Inappropriate Consideration Of Prior Contacts With the Judicial System.

B. Imposition of A Consecutive Sentence.

8

I.

We review a trial judge's decision regarding excusals for cause under an abuse of discretion standard. State v. Tinnes, 379 N.J. Super. 179, 184 (App. Div. 2005). In order to succeed, the moving party must establish legally cognizable grounds demonstrating the juror's partiality in the case. Id. at 185.

Indeed, the Supreme Court has explained that "trial courts are 'vested with broad discretionary powers in determining the qualifications of jurors and [a judge's] exercise of discretion will ordinarily not be disturbed on appeal.'" State v. Singletary, 80 N.J. 55, 62 (1979) (alteration in original) (quoting State v. Jackson, 43 N.J. 148, 160 (1964)); accord State v. DiFrisco, 137 N.J. 434, 459 (1994). Thus, we defer to the decision made by the trial court in matters pertaining to the potential bias of prospective jurors. Singletary, 80 N.J. at 62-63. The trial court is in the best position to assess a juror's credibility as he or she responds to questions aimed at determining impartiality. Id. at 63.

Defendant's first point on appeal is the judge erred when she refused to strike Juror Number 5 for cause. Defendant contends the error was compounded when she barred her exercise of a peremptory challenge to excuse the juror.

The judge's decision not to excuse for cause is supported by the record. Her initial question was whether Juror Number 5 had heard or seen "anything

9

outside in the hallway that might affect your ability to remain impartial in this case?" The juror responded simply, "no." Juror Number 5 described hearing defendant's family members say that they did not know whether defendant "did it or what happened that day[,]" and that once he realized the topic of conversation, the juror "walked away." As a result, he did not "have a good recollection of exactly what was said." When pressed, Juror Number 5 twice repeated that the only comment he overheard was that defendant's family did not know what happened.

Obviously, only the trial judge was in a position to assess Juror Number 5's demeanor, and whether his assertion that he had not formed an opinion regarding defendant's guilt was credible. Nothing in the record would cause us to doubt her conclusion. Under the circumstances as described by the juror, and his answers, the judge's opinion the juror remained neutral was unassailable.

It is troubling, however, that the judge apparently decided not to allow defendant to exercise a peremptory challenge. Although jury selection had concluded, the jury had not been sworn. To have released the juror would not have had significant administrative consequences by delaying the proceedings, or otherwise affected them.

The use of a peremptory challenge is designed to "assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them and not otherwise." DiFrisco, 137 N.J. at 468. But, although a substantial right, a peremptory challenge is not a constitutionally protected fundamental right. Singletary, 80 N.J. at 62.

The goal of peremptory challenges is to secure an impartial jury. DiFrisco, 137 N.J. at 468. No harm would have occurred had the judge allowed jury selection to reopen and the exercise of the peremptory. Nonetheless, we assume the judge's refusal by silence did not impact the impartiality of the jury that was ultimately sworn and deliberated because she had determined Juror Number 5 was impartial.

II.

Although not entirely clear, it appears defendant also contends that allowing the jury to hear Eugene's testimony regarding his note on the photo identification form was clearly capable of producing an unjust result, causing the jury to reach a conclusion it might not otherwise have reached. See R. 2:10-2.

Eugene explained what he saw: defendant draw a gun, point it at Jennifer, and then walk across the street after a companion took the gun away. He saw

11                                                                    A-0412-16T1

defendant retrieve the weapon and use it to shoot into the crowd, killing Brown. His written statement that "Amber killed a person last night" was consistent with his testimony describing what he witnessed at the time of the shooting.

A trial court's rulings regarding the admission of evidence are reviewed under an abuse of discretion standard. State v. Korupchak, 221 N.J. 368, 385 (2015). No abuse of discretion occurred here as Eugene's testimony and note were about matters about which he had personal knowledge. See N.J.R.E. 602. The very definition of a fact witness is one who conveys information perceived through one or more of his or her senses. State v. Miller, 449 N.J. Super. 460, 470 (App. Div. 2017).

The Court has stated that in addition to simply recounting facts, a lay witness may opine as to his or her observations. State v. Bealor, 187 N.J. 574, 586 (2006). N.J.R.E. 701 limits those opinions to those rationally based on the witness's perception which can assist the jury's determination of a fact in issue. Eugene's testimony fell within that precise category. Eugene explained why he wrote "Amber killed someone last night"—and the explanation was rationally based on his observations. Therefore, the court's admission of Eugene's testimony was not an abuse of discretion. It was not clearly capable of producing an unjust result.

III.

Defendant also contends the court erred by rejecting her request for a third delay to allow her to produce a defense witness. That too is a discretionary decision that a court is entitled to make. See State v. Miller, 216 N.J. 40, 65 (2013). Here, the judge first continued the matter from a Thursday to a Tuesday, and when the witness failed to appear, granted a second adjournment to the following day. On Wednesday, the potential witness did not respond to phone calls either from counsel or the court. There is nothing unusual about this problem, and the judge's decision to resume the trial after a six-day delay after defendant failed to produce the witness is simply not an abuse of discretion.

IV.

Defendant argues the judge should have charged the jury regarding the need for unanimity with regard to the pointing offense. The claim is not supported by the record. By way of context, the judge charged in substantial conformity to the Model Jury Charge. See Model Jury Charge (Criminal), "Aggravated Assault" (rev. March 21, 2005). Counsel did not object. Defendant thus bears the burden of demonstrating that plain error occurred. See R. 2:10-2.

Unanimity charges should be given in cases where there is the danger of a fragmented verdict. Even then, in the absence of a specific request to charge,

13

the failure to do so is not reversible error.  See State v. Parker, 124 N.J. 628, 637 (1991).  Where the instruction is not requested, a general instruction typically suffices.  Id. at 638.  This court gave the jury the general instruction requiring that the verdict be unanimous as to each charge.  See Model Jury Charge (Criminal), "Criminal Final Charge" (rev. May 12, 2014).

The facts of the case did not establish the possibility of a fragmented verdict.  It is clear that defendant initially pointed the gun at Jennifer directly.  Defendant's suggestion that some jurors may have convicted based on a second possible pointing once defendant was across the street is speculation not supported by the record.  The State focused on that initial confrontation.  No questions were asked by the jury with regard to the pointing offense or the relevant charges.  The proofs could not have led to confusion or resulted in a fragmented verdict.

## V.

Defendant claims the cumulative effect of the errors warrants a new trial.  No harmful errors occurred.  This point lacks sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(2).

A-0412-16T1

VI.

Finally, defendant argues that the sentence imposed is excessive because the judge anchored her sentencing analysis on dismissed juvenile adjudications. There is no dispute that a sentence requires consideration of the defendant's complete history and circumstances. See State v. Natale, 184 N.J. 458, 472 (2005). This necessarily includes defendant's juvenile history, arrests, dismissed charges, adjudicated charges, sentences to probation, and violations of those probations. Therefore, substantial evidence supported the court's finding as to aggravating factors even if she considered dismissed charges. The court adhered to the sentencing guidelines, and appropriately weighed them in calculating the number of years of imprisonment within the lawful range.

Furthermore, the judge's decision to impose a consecutive sentence complied with the factors enumerated in State v. Yarbough, 100 N.J. 627, 643-44 (1985). As the judge said, the crimes involved two different victims and were themselves separate crimes. The judge's Yarbough analysis was correct. The overall sentence does not shock our judicial conscience. State v. Roth, 95 N.J. 334, 364-65 (1984).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15