JOSEPH CORBO AND JEANNE CORBO, HIS WIFE, PLAINTIFFS-APPELLANTS, v. WILLIAM P. CRUTCHLOW, M.D., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 3, 1980—Decided April 28, 1980.

304

Before Judges ALLCORN, MORGAN and FRANCIS.

*Adrian I. Karp* argued the cause for appellants.

*Peter J. McDonald* argued the cause for respondent (*Ronca & McDonald*, attorneys; *John J. Ronca* on the brief).

The opinion of the court was delivered by

ALLCORN, P. J. A. D.

Imperative to the fulfillment of the objects and purposes of the relatively newly mandated pretrial panel review program under *R.* 4:21 is the essential that each of the members of the panel be thoroughly impartial. The rule itself explicitly requires that the doctor member and the lawyer member "disclose any circumstances likely to create a presumption of bias or

which they believe might otherwise disqualify them," *R.* 4:21–4(b)—plain recognition that each panel member must be free from the influence of any factor that would affect or that would even create the risk of affecting his impartiality.

■ As a consequence where, as here, the doctor member of the panel disclosed that he was then a defendant in a pending *medical malpractice action*, he should have been disqualified. from sitting as a member of the panel. Even accepting at face value his representation that such circumstances would in no way affect his impartiality or otherwise impair his judgment, there still remains the risk that such circumstance might have some influence upon his ability to remain detached and disinterested in the performance of his fact finding function, albeit unconsciously and unintentionally. Indeed, the official questionnaire addressed by the Administrative Office of the Courts to every prospective doctor member of a malpractice panel gives tacit cognizance to the proposition. Among other things, that questionnaire makes inquiry of the doctor as follows:

6. Have you ever been sued for malpractice?
What was the nature of the suit(s)?
What was the result of the suit(s)?

■ The requirement of impartiality of panel members takes on even greater significance when it is observed that the rule enjoins the panel to "make specific findings of fact as to whether there was malpractice and, if so, a specification thereof [and to] then enter and serve upon all parties . . . an appropriate order determining whether the claim is based on reasonable medical probability," *R.* 4:21–5(e). The use of and reliance upon the order and the findings of the panel by the parties in negotiating a settlement or, failing settlement, by introducing the findings into evidence at the trial (assuming the report to be unanimous) is highly likely. *R.* 4:21–1, *R.* 4:21–5(e). The critical effect of any taint of the panel order is obvious.

 As earlier indicated, the members of the panel act as factfinders. *R.* 4:21–5(e). As such, each necessarily must be as free as possible from the influence of any bias, prejudice or partiality in favor of the plaintiff or in favor of the defendant. As in the case of other persons acting as factfinders as part of the judicial process, such as jurors, the panel members "must be carefully selected with an eye towards their ability to determine the controverted issues fairly and impartially; [and] the trial court should see to it that [each] is as nearly impartial 'as the lot of humanity will admit.'" *State v. Jackson*, 43 *N.J.* 148, 157–158 (1964), *cert.* den. 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.*2d 572 (1965). It is not enough that the affected member of the panel disclaims any partiality, for as the court observed in *Jackson*, sincere as the disclaimer may be, "it runs counter to human nature," *Id.* at 160.

 Likely prejudice to the rights of plaintiffs in this case to a fair and impartial panel hearing, report and order inhered in the failure of the trial judge to heed these elementary principles and to disqualify the doctor as a member of the panel. *Wright v. Bernstein*, 23 *N.J.* 284 (1957); compare *McNabb v. Green Real Estate Co.*, 62 *Mich.App.* 500, 233 *N.W.*2d 811 (Ct.App.1975). *See, State v. Singletary*, 80 *N.J.* 55 (1979).[1]

Accordingly, the action of the Law Division denying the application to disqualify the doctor member of the panel is reversed; the order of said panel is vacated and set aside; and

---

[1]Unlike the situation in *State v. Singletary*, the trial judge did not personally interrogate or interview the doctor and thus had no opportunity to observe his demeanor and thereby judge his "credibility as he responds to questions designed to detect whether he is able to sit as a fair and impartial trier of fact." *Id.* at 62–63. Instead, according to his letter of December 17, 1979 addressed to counsel for plaintiffs, the trial judge simply "reviewed the doctor's answers to the questions submitted to him and found his answers indicative of impartiality on his part. Accordingly, I, exercising my discretion, permitted him to stay on the panel."

the cause is remanded to the Law Division with directions to submit the claim to a new panel pursuant to the provisions of *R.* 4:21, except that *none of the persons who was a member of the first panel* (doctor, lawyer or judge) shall be chosen for or participate as a member of the newly constituted panel.

MORGAN, J. A. D. (dissenting).

The problem with the court's holding is the expandable nature of the "pending suit" criterion for disqualification of the physician panelist. I see no legitimate distinction, for disqualification purposes, between a doctor who is presently a defendant in a malpractice suit and one who has been a defendant in the recent or remote past, or one who is presently threatened with that status. The spectre of a malpractice suit haunting all doctors can itself be viewed as a bias-producing factor. If absolute impartiality is the desideratum, as the majority suggests, then one must question the very inclusion of doctors in the *R.* 4:21 panel because doctors as a group are aware of the cumulative effect of malpractice awards on their premiums and any sizeable award will have some impact on the insurance premiums the doctor-panelist will have to pay. Hence, although in this matter the court disqualified on a mandatory basis only those doctors whose pending malpractice suits await disposition, I see no basis on which doctors who have been successfully sued in the past can resist disqualification, or even, for that matter, those doctors who have so far been successful in their attempts to avoid liability. Will those doctors who in the recent past have made settlements be regarded as disqualified as a matter of law? Is the trial judge to go into the amount of the settlement in relation to the size of the claim in order to determine whether the settling doctor "won or lost" in order to assess his impartiality? Is any doctor who has ever been a defendant in a malpractice suit or settled such a claim subject to the rule announced in this case? If he is, as panel judges would have every

reason to conclude, then we must confront the questionable viability of the *R.* 4:21 procedure.

The pool of doctors available for *R.* 4:21 service is not inexhaustible. Most recent figures confirm that approximately 1,000 physicians in 34 specialties in all counties are participating in the program on a statewide basis. The numbers available countywide range from 6 in Salem to 121 in Essex. Morris County, where this appeal originates, has but 35 physicians available in all specialties as participants in *R.* 4:21 proceedings—only 8 qualify in general surgery, 9 in obstetrics and gynecology, 1 in neurosurgery and none in many of the remaining specialties.

Many of these doctors must be disqualified for reasons unrelated to their status as present or past defendants. They may be acquainted with the defendant-physician, not an infrequent occurrence with respect to doctors in less populated specialties, or have been represented by the same lawyer, again a not infrequent occurrence in light of the concentration of malpractice defense work in few law firms. Moreover, there will be cases in which the subject matter of a pending or past malpractice suit against a proposed doctor-panelist, and his alleged role in the matter would, as a matter of law, require his disqualification. To add another basis for mandatory disqualification, participation as a defendant in a pending malpractice case, would undercut the survival of the *R.* 4:21 program, particularly where, as here, that basis must apply as well to doctor-defendants in past malpractice cases or those presently threatened with future malpractice suits.

One cannot quarrel with the majority's concern for impartiality. I would have no objection if automatic disqualification of physician-panelists who are being sued would achieve this result. The problem is that the quest for absolute assurances of impartiality may ineluctably lead to the conclusion that physician participation in *R.* 4:21 proceedings is unworkable. For example, a neurosurgeon-panelist would arguably tend to favor a

defendant-neurosurgeon on the basis of collegial empathy for his predicament and more practically because a large plaintiff's recovery would ultimately reflect itself in the size of his own insurance premiums. There can be no doubt that were a neurosurgeon a juror on a malpractice case involving the liability of another neurosurgeon, he would be excused either for cause or peremptorily. In the almost unimaginable circumstance of a practicing neurosurgeon occupying the status of judge, there is no doubt that he would be disqualified on that ground alone without considering any pending or past suits against him.

Clearly, the potential for bias, however small, inheres in the very procedures set up in R. 4:21; I can only conclude that its draftsmen considered that the benefits to be derived from physician participation on R. 4:21 panels offset the risk of biased findings and conclusions arising from that participation particularly in light of the safeguards provided by the two other panelists.

In my view, the preferred ruling is to regard motions for the disqualification of any R. 4:21 panelist as being addressed to the sound discretion of the judge participant on the panel. *See State v. Singletary,* 80 *N.J.* 55 (1979). In many cases, the physician-panelist's role in a malpractice suit may only be peripheral; he may have been joined only out of fear that failing to do so would subject the lawyer to a later malpractice claim. In other cases the pending suit may be so devoid of merit, to the physician's knowledge, that he is not concerned about its outcome. Or the judge-panelist may be convinced, as apparently was the judge in this case, of the doctor's sincerity in his affirmations of impartiality despite the pendency of the suit. It must also be borne in mind that the judge will be conferring with the doctor in the disposition of the R. 4:21 proceeding and is therefore in the best position to detect a tendency to decide a fact or reach a conclusion on any basis other than its merits. I have no doubt that the judge's awareness of bias on the part of

either of the two panelists, however belated, would result in aborting the hearing and commencing anew with a more impartial panelist. That such did not occur in this case leads me to conclude that no suggestion of bias surfaced.

In any event, the physician-panelist may be called by either party to testify at the trial, and if the plaintiff is concerned about bias, the matter can be brought to the jury's attention as can the reasons for the result reached by the physician. *R.* 4:21–5(d).

It may well be that challenges for bias should be determined only after the judge-panelist receives personal responses from the physician concerning his impartiality in face of the pending suit so as to enable him better to judge the sincerity of the responses. *See State v. Singletary, supra.* I would not, however, require that the present matter be reheard for failure of the judge to have pursued this course because the judge and lawyer-panelist, with knowledge of plaintiffs' challenge to the doctor-panelist, deliberated with him on the merits of plaintiffs' claim prior to reaching a unanimous disposition, thus providing both with the best means of detecting any bias. In this case a simple statement by the trial judge concerning his impressions of the doctor-panelist's impartiality should suffice.

I would affirm the trial court denial of the application to disqualify the doctor-panelist, contingent upon the judge-panelist's statement.