JOSEPH CORBO AND JEANNE CORBO, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. WILLIAM P. CRUTCHLOW, M. D., DEFENDANT-APPELLANT.

Argued January 26, 1981—Decided May 21, 1981.

*John J. Ronca* argued the cause for appellant (*Ronca, McDonald & Judge*, attorneys; *Dennis M. Di Venuto*, on the brief).

*Adrian I. Karp* argued the cause for respondents.

The opinion of the Court was delivered by

PASHMAN, J.

In this appeal we must decide whether a physician should be disqualified from serving on a *R.* 4:21 medical malpractice panel if he is the defendant in a pending malpractice action. The Appellate Division, 173 *N.J.Super.* 302, held that such a physician is automatically disqualified and ordered that the case be remanded for a hearing before a new panel. Although we agree that a new panel must be convened in this case, we believe that, when challenged, the impartiality of such a physician should be reviewed in each case by the presiding judge and no *per se* rule of disqualification should be applied.

I

In 1978, this Court adopted the present *R.* 4:21 based on the recommendation of the Committee on Relations with the Medi-

cal Profession.[1] This rule requires the pretrial screening of all medical malpractice actions, except those where the sole factual issue is one of witness credibility, before a three-member panel composed of a judge of the superior court, an attorney and a physician. The purpose of the rule, as is explained in its first section, is to

discourag[e] baseless actions and encourag[e] settlement of those actions based on reasonable medical probability; to monitor efficiently these cases through the court; and, to assist in the early disposition of medical malpractice actions. [R. 4:21–1]

The judge, who presides over the panel and who may not participate in any subsequent trial of the case, is designated by the Assignment Judge to head all such panels in the vicinage. R. 4:21–2(b). The attorney is selected by the Administrative Director of the Courts from a panel of attorneys with trial experience designated by the Supreme Court. R. 4:21–3, R. 4:21–4(a)(3). The Administrative Director also chooses the physician from a panel of doctors designated by the Medical Society of New Jersey or a similar panel proposed by the New Jersey Society of Osteopathic Physicians and Surgeons, depending upon the discipline of the defendant doctor. R. 4:21–4(a)(2).

The rule also requires that at the time the attorney and the doctor are notified of their selection for membership on the panel,

they disclose any circumstances likely to create a presumption of bias or which they believe might otherwise disqualify them.

The information so disclosed is forwarded to all parties at the time they are notified of the panel membership, following which the parties have 15 days to "file and serve written objection to the designation of the doctor or attorney, with supporting reasons therefor." Such objections are to be ruled upon by the presiding judge. R. 4:21–4(b).

---

[1]See Report of the Supreme Court's Committee on Relations with the Medical Profession, 101 N.J.L.J. Index Page 451 (1978) (hereinafter "Report").

Prior to the adoption of the present rule, R. 4:21 provided for voluntary submission of malpractice claims to medical-legal panels. See Pressler, Current N.J. Court Rules, Comment R. 4:21 (1981 ed).

In this case, plaintiffs made a timely objection to the designation of Dr. John P. Mullen, the physician panelist selected by the Administrative Director of the Courts. The basis for this objection was that Dr. Mullen had a malpractice suit pending against him, a fact revealed in a questionnaire completed by him and sent to the parties along with notification of his designation as panelist. Dr. Mullen was not disqualified because of the objection,[2] and the panel met on December 11, 1979. Plaintiffs repeated their objection at this session before the panel began hearing evidence. Pursuant to this hearing, the panel found that "the defendant did not deviate from the accepted medical standard." Because this determination was unanimous, the panel's findings were admissible into evidence at a subsequent trial of the case. R. 4:21–5(e).

No trial has yet been held, however. Plaintiffs moved in the Appellate Division for leave to appeal the panel's order. The basis of this motion was that it was error for the presiding judge to overrule plaintiffs' objection to the designation of a physician panelist who had a malpractice suit pending against him at the time of his selection. Plaintiffs' motion was granted and a divided court ruled in plaintiffs' favor.

Based on its belief that it is "[i]mperative to the fulfillment of the objects and purposes" of mandatory pretrial screening of malpractice actions pursuant to R. 4:21 "that each of the members of the panel be thoroughly impartial," 173 N.J.Super. at 304, the majority held that

> where, as here, the doctor member of the panel disclosed that he was then a defendant in a pending medical malpractice action, he should have been disqualified from sitting as a member of the panel. [Id. at 305]

---

[2] It appears from the record that plaintiffs' objection was not formally answered by the presiding judge, perhaps because the objection was sent to the Administrative Office of the Courts and not to the judge. The proper procedure is for an objecting party promptly to submit objections in writing directly to the presiding judge and for that judge to respond to these objections in writing prior to the convening of the panel.

Therefore, the court ruled that the physician panelist should have been disqualified, vacated the findings of the panel and ordered the case to be submitted to an entirely new *R.* 4:21 panel.

Judge Morgan dissented. 173 *N.J.Super.* at 307. She shared "the majority's concern for impartiality," *id.* at 308, but disagreed with the rule announced by the majority primarily on practical grounds. She saw no reason to distinguish a physician panelist with a pending malpractice suit from one who has been sued in the past "or even, for that matter, those doctors who have so far been successful in their attempts to avoid liability." *Id.* at 307. Because "[t]he pool of doctors available for *R.* 4:21 service is not inexhaustible," she reasoned,

[t]o add another basis for mandatory disqualification, participation as a defendant in a pending malpractice case, would undercut the survival of the *R.* 4:21 program, particularly where, as here, that basis must apply as well to doctor-defendants in past malpractice cases or those presently threatened with future malpractice suits. [*Id.* at 308]

Furthermore, she said, the requirement in *R.* 4:21 that one of the three panel members be a physician created an inherent "potential for bias." Accordingly, Judge Morgan believed that objections to participation of *R.* 4:21 panelists should be "addressed to the sound discretion of the judge participant on the panel." *Id.* at 309.

Following the Appellate Division's decision to vacate the findings of the panel, defendant filed a motion for leave to appeal that decision to this Court, which we granted. 84 *N.J.* 472 (1980).

We conclude that a new hearing is necessary in this case. While we do not believe that the pendency of a malpractice suit against a physician panelist is a *per se* basis for that panelist's disqualification, nevertheless where a party objects to a physician panelist because of a present or past malpractice suit, the presiding judge should closely question that panelist as to the circumstances of such a suit to determine whether the doctor can objectively participate in the deliberations of the panel.

Because no such questioning occurred in this case, and because there is no fair and reliable method of correcting this error at this stage of the proceedings, we remand the case for a *R.* 4:21 hearing before a new panel.

## II

The starting point in the analysis of this problem is the central role which the *R.* 4:21 panels play in the disposition of medical malpractice suits. There is no disagreement that the explosion in medical malpractice litigation in recent years makes a procedure designed to screen out meritless claims and encourage settlement of meritorious ones not merely desirable but necessary. *See* P. Carlin, *Medical Malpractice Pre-Trial Screening Panels: A Review of the Evidence* (1980) (hereinafter "Carlin"). Many states require some type of pretrial review of medical malpractice cases while others have voluntary procedures. *See* Sanbar & Pataki, *Arbitration and Screening Panels in Medical Malpractice,* 3 *Okla.City U.L.Rev.* 33 (1978); *Report, supra,* 101 *N.J.L.J.* at Index Page 451; Carlin, *supra.* As noted above, under our present scheme all medical malpractice actions, including cross-claims or counterclaims alleging malpractice, must be heard by a *R.* 4:21 panel, except cases in which "there is no dispute either as to the applicable standard or the fact of violation thereof, the sole factual issue is one of witness credibility, and panel submission would consequently be of no significant value in the efficient disposition of the action." *R.* 4:21–2(d).

Not only is such pretrial screening of malpractice claims required in almost all cases, the panel's findings may be of considerable significance at any subsequent trial. The rule provides that when the panel's determinations are unanimous, "the findings contained therein shall be admissible in evidence at trial upon the request of any party to the hearing." *R.* 4:21–5(e). Although the panel's findings are not binding upon the trier of fact, which may accord them whatever weight it

deems appropriate, those findings may often be important determinants of the outcome of a trial.

The procedures established by *R.* 4:21 thus revolutionize the handling of malpractice suits by our courts.[3]  The panels that operate under the rule play a central role in the treatment of these cases.  It is thus of no small moment to ensure that these panels maintain the highest possible standards in their deliberations and that no partiality of panel members arises to cast doubt on the fairness or propriety of these proceedings.

The Appellate Division shared these views.  Consequently, the majority adopted a rule disqualifying from participation in such a panel any physician facing a pending malpractice suit.  We do not believe that this rule is best suited to achieve the goal of assuring impartiality in these panels.  Instead, the members of the panel should be selected in accordance with the procedures set out below.

### III

Plaintiffs argue that panelists are, in effect, judges and should be held to the same strict standards of disqualification for interest as are judges.  *See R.* 1:12–1.  However, unlike judges, who are often finders of fact and who always make rulings of law, the panelist only contributes to the findings of the *R.* 4:21 panel and makes no legal determinations.  The *R.* 4:21 hearing in no way impinges upon any party's right to a trial of the action, and it is only at such a trial that factfinding will occur and legal decisions be made by which the parties will be bound.  Although the findings of a unanimous panel are admis-

---

[3]Plaintiffs do not challenge the constitutionality of *R.* 4:21.  *Cf. Comiskey v. Arlen,* 55 *A.D.2d* 304, 390 *N.Y.S.2d* 122 (1976), aff'd, 43 *N.Y.2d* 696, 401 *N.Y.S.2d* 200, 372 *N.E.2d* 34 (1977) (upholding constitutionality of New York statute which was the model for the New Jersey rule).

The Law Division has recently upheld the constitutionality of this rule, *Suchit v. Baxt,* 176 *N.J.Super.* 407 (Law Div.1980).

sible in evidence at trial, such findings "shall not be binding upon the jury or upon a judge sitting as the trier of the facts." *R.* 4:21–5(e). Because of the essentially advisory nature of the findings of the *R.* 4:21 panel, we reject the characterization of physician panelists as judges, and do not believe that such strict standards of disqualification are appropriate.

The defendant, in contrast, believes that physician panelists are best compared to jurors. As our discussion below indicates, we believe much useful guidance is to be derived from this comparison, even though we think the characterization of panelists by the court below as "factfinders," 173 *N.J.Super.* at 306, is not strictly accurate.

In view of the uniqueness of *R.* 4:21 panels, we do not believe that there is already existing in our law any perfect analogy to the physician panelist. However, there is considerable similarity between the findings of a panel and the opinion of an expert witness, a comparison made by several other courts. *See Suchit v. Baxt,* 176 *N.J.Super.* 407, 418 (Law Div.1980); *Comiskey v. Arlen, supra,* 55 *A.D.2d* 304 at 315, 390 *N.Y.S.2d* 122 at 130; *Eastin v. Broomfield,* 116 *Ariz.* 576, 581, 570 *P.2d* 744, 749 (1977). The panel's findings, like any good expert opinion, should be helpful to the parties in determining whether to prosecute their actions. If unanimous, the panel's findings are admissible in evidence, to be "accorded such weight as the jury or the judge sitting as the trier of the facts chooses to ascribe to [them] in view of all the relevant evidence adduced at trial." *R.* 4:21–5(e). Finally, whatever the panel's findings, the physician panelist may always be called as a witness at trial by any party, *R.* 4:21–5(d), even for the limited purpose of challenging his credibility, interest or bias and the weight to be accorded the panel report. To this end, he can be closely questioned as to his impartiality in the matter.

Of course, significant differences exist between an expert witness and the *R.* 4:21 panel. The panel proceeding is a prerequisite to any trial on the merits of the case. The panel is,

and must be, unbiased, its members being selected by the Administrative Director of the Courts. These factors greatly increase the importance of the panel's findings to the parties in the prosecution of their actions and augment the weight likely to be accorded to unanimous panel findings by the trier of facts. As a practical matter, we recognize that a unanimous panel order in favor of one party will pose a serious obstacle to the other side should it decide to proceed to trial, as it has a right to do. Because of these special considerations, fundamental fairness to the parties requires that the panel members be free from bias.

■ In contrast to the majority of the court below, however, we do not believe that it is necessary or even desirable to disqualify automatically every doctor panelist who is a defendant in either a pending or a past malpractice action.[4] The possible range of a doctor's experience as a party in malpractice suits is so wide both in nature and time that a *per se* disqualification would be disastrously overinclusive.[5]

■ Instead, we believe that whenever a party objects to a proposed physician panelist because that physician is or has been a defendant in a malpractice action, or for some other valid reason, the judge presiding over the panel should determine whether the doctor will be able to maintain impartiality through all phases of the *R.* 4:21 hearing and any later trial proceedings.

---

[4]Although the facts of this case concern a physician panelist with a malpractice suit pending against him, we agree with the dissenting judge in the Appellate Division, 173 *N.J.Super.* at 307, that the same considerations and conclusions should apply to a doctor who has been party to a malpractice action in the past.

[5]We have noted the argument of Judge Morgan in dissent below that in view of the large number of doctors with present or past involvement in malpractice suits, a rule of *per se* disqualification would undercut the survival of the *R.* 4:21 program. 173 *N.J.Super.* at 308. Although we agree with Judge Morgan, we decline to use her conclusion as a basis for our holding today.

"The presence or absence of good faith or honest motives is not the test." *Board of Education of West Orange v. International Union of Operating Engineers Local 68*, 109 *N.J.Super.* 116, 120 (App.Div.1970); *cf. State v. Singletary*, 80 *N.J.* 55, 64 (1979) ("[A] juror's professions of impartiality will not always insulate him from excusal for cause."); *State v. Jackson*, 43 *N.J.* 148, 160 (1964), *cert.* denied, 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.2d* 572 (1965). The presiding judge should make this determination on the basis of something more than the information concerning pending or past malpractice suits disclosed by the physician pursuant to *R.* 4:21–4(b). Specifically, the judge must conduct a session of careful, first-hand questioning of the challenged panelist in order to decide, based on the physician's demeanor and candor in answering questions as well as on any additional information revealed, whether that doctor will be an impartial panelist.

This difficult determination will rest within the discretion of the presiding judge. Many of the considerations relevant to a trial judge's decision whether to disqualify a challenged juror for cause are fully applicable here. We recently reviewed them in *State v. Singletary, supra*:

> Decisions concerning the potential bias of prospective jurors are primarily subjective in nature. They require at bottom a judgment concerning the juror's credibility as he responds to questions designed to detect whether he is able to sit as a fair and impartial trier of fact .... [S]uch evaluations are necessarily dependent upon an observation of the juror's demeanor during the course of *voir dire*. [80 *N.J.* at 63]

And as this Court said concerning the question of whether a borough councilman's interest in the outcome is sufficient to disqualify him from voting on a proposed ordinance, the decision "is necessarily a factual one and depends upon the circumstances of the particular case." *Van Itallie v. Borough of Franklin Lakes*, 28 *N.J.* 258, 268 (1958).

▮▮▮ Precise guidelines for disqualification are not susceptible to formulation in the abstract, but certain observations are pertinent. Above all, we expect the presiding judges to resolve doubts in favor of disqualification. As the Court said in regard

to disqualification of jurors, " '[i]f error is to be committed, let it be in favor of . . . absolute impartiality and purity.' " *State v. Jackson, supra,* 43 *N.J.* at 160. In clear-cut cases, such as one in which a panelist is a party to, or was recently found liable in, a malpractice suit very similar to the one in which he has been asked to serve as a panelist, disqualification will certainly be in order. By contrast, an unsuccessful action against the panelist in the distant past will almost certainly not call for disqualification. Between such extreme cases, we trust that presiding judges will, by virtue of their specialization in this area as well as their judicial sensibilities, develop expertise in making these case-by-case determinations.

▉▉▉▉ Appellate review of the presiding judge's decision will be available,[6] and towards this end the judge's questioning of a challenged panelist must be recorded.[7] However, the starting point of judicial review of the presiding judge's decision must be the principle that, as in the case of disqualification of jurors, the judge is "vested with broad discretionary powers" and this "exercise of discretion will ordinarily not be disturbed on appeal." *State v. Singletary, supra,* 80 *N.J.* at 62. The presiding judge's decision as to whether to disqualify a challenged panelist will be upheld absent a clear showing of abuse of discretion.

## IV

▉▉▉ Turning to the present case, the presiding judge, exercising his discretion, declined to disqualify the challenged physician panelist. However, the judge failed to question the challenged physician closely to determine if he could, notwithstanding his

---

[6] Such review may be sought in the Appellate Division either pursuant to *R.* 2:2–4 after the panel has rendered its findings, *see, e. g., Vasily v. Cole,* 173 *N.J.Super.* 152 (App.Div.1980), or as an appeal as of right to the Appellate Division after trial, *R.* 2:2–3(a).

[7] This requirement does not violate *R.* 4:21–5(a), which proscribes the keeping of any verbatim record of panel hearings.

involvement in a pending malpractice suit, participate in the *R.* 4:21 hearing with impartiality. The judge apparently based his decision in this matter solely on the doctor's responses to the brief questionnaire submitted to all *R.* 4:21 doctor and attorney panelists, *see* 173 *N.J.Super.* at 306 n.1, and thus had no opportunity to make the careful assessment of impartiality that we deem necessary. While there is no reason to believe that Dr. Mullen was anything less than impartial in the manner in which he participated in this proceeding, fairness to all parties requires that the case be remanded for a *de novo* hearing before a *R.* 4:21 panel composed of three new members.

Consequently, while we disagree with the holding announced by the Appellate Division and the reasoning in support of that holding, the judgment of that court to remand the case for a hearing before a new *R.* 4:21 panel is affirmed, and selection of the physician member of this panel is to be conducted in accordance with the procedure that we have described above.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK —6.

*For reversal*—None.