**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5045-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EILEEN LEONE,

    Defendant-Appellant.

_____

> Argued March 27, 2019 – Decided June 23, 2020
>
> Before Judges Fuentes, Vernoia and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-09-2731.
>
> Lauren Stephanie Michaels, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Jennifer K. Kmieciak, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jennifer K. Kmieciak, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant Eileen Leone was tried before a jury and convicted for the murder of Darius Smith. N.J.S.A. 2C:11-3a(1), (2). On March 3, 2017, the trial judge sentenced defendant to serve a term of thirty years imprisonment without parole. This was the second time defendant stood trial on this charge. The first time, the judge declared a mistrial sua sponte in response to certain irregularities that, although unrelated to the charge against defendant, had the capacity to undermine the jury's ability to remain fair and impartial.

Defendant argues the trial judge erred in declaring a mistrial in the first trial. Consequently, defendant argues the State was constitutionally barred from trying her a second time on these same offenses under the Fifth Amendment double jeopardy clause. Furthermore, even if this court were to reject this argument, defendant argues the trial judge committed reversible error by denying defense counsel's and the prosecutor's joint application for a mistrial in the second trial based on the misconduct of one of the deliberating jurors. Based on our review of the record and mindful of prevailing legal standards, we affirm.

We derive the following facts from the record developed before the trial court.

# I

## The First Trial

On September 9, 2014, an Atlantic County grand jury indicted defendant for the murder of Darius Smith. The trial was originally scheduled to start on January 25, 2016. After several postponements, it began on August 8, 2016. Jury selection ended on August 10, 2016. The jury was sworn and the attorneys presented their opening statements that same day. After the attorneys' opening remarks, the trial judge excused the jury to conduct a N.J.R.E. 104 hearing to determine the admissibility of a statement made by defendant to a police officer.

During this interlude, an assistant in the jury management office informed the trial judge that four members of the jury in the Leone case saw an unknown individual taking photographs of license plate numbers of cars parked in the courthouse parking lot. The assistant recognized the photographer as the defendant in an unrelated case. The assistant told the trial judge that the jurors in the Leone case who saw the photographer's unusual behavior appeared to be concerned.

After conferring with counsel, the judge decided to question all fifteen jurors individually to find out what they saw and knew about the incident. The judge told the attorneys that based on the jurors' responses, he would determine

whether the jurors could continue to serve on the jury. The first five jurors the judge questioned indicated unanimously that they did not have any concerns about remaining on the jury. At this point, the judge held a sidebar conference to inform the attorneys that a member of his staff had given him a note indicating that detectives from the Atlantic County Prosecutor's Office (ACPO) were outside the courtroom seeking to interview the jurors about what they witnessed in the parking lot.

The trial judge decided to take a fifteen-minute recess to consult with the vicinage's Presiding Judge of the Criminal Part. When the judge returned, he informed the attorneys at sidebar that he had decided to declare a mistrial sua sponte. In the judge's view, he did not have any other viable alternative because the jurors who witnessed the individual taking photographs of license plates in the courthouse parking lot could be called as potential witnesses in that case. The jurors/witnesses would be questioned by representatives of the ACPO, the same law enforcement agency that was prosecuting defendant in this case. Although defense counsel objected, the judge overruled the objection, declared a mistrial, and dismissed the jury.

## The Second Trial

Before the start of the second trial, defense counsel moved to dismiss the indictment on double jeopardy grounds. After hearing oral argument from counsel, the judge denied defendant's motion. The judge submitted a five-page memorandum of opinion in support of his decision in which he concluded that this was "merely an unfortunate occurrence." The judge found that neither party engaged in any conduct to bring about this outcome. Most importantly, the judge did not find any evidence that defendant was prejudiced by the delay. "In fact, the [c]ourt finds that the risk of prejudice to [d]efendant, caused by a potentially tainted jury, was eliminated by the mistrial."

The second trial began on January 9, 2017. After the attorneys' presentation and closing arguments, jury deliberation began on January 18, 2017. The following day, before the start of deliberations, juror number 11 presented a note to the jury manager. Outside the presence of the jury, the judge addressed the attorneys directly and stated for the record: "I instructed the jury manager to not allow the jury to continue to deliberate until such time as we [address] this note." The note from juror number 11, marked C-5 in evidence, asked: "can a juror take notes from a trial on a cellphone?"

The trial judge placed on the record the process he was going to follow to determine the best way to answer the juror's question. He planned to question each juror individually to ascertain three things: (1) "if they're aware of it[;]" (2) "if they did it[;]" and (3) "if it affects their ability to continue to proceed . . . ." The judge also stated that he would "instruct all of them that they're not to discuss this issue with each other amongst themselves." Counsel consented to the judge's proposed approach.

The judge began by asking juror number 11 what caused her to write the note. The juror responded that in the course of discussing the case, a particular juror said "they wanted to check their notes . . . ." These "notes" were located on the juror's cellphone. Juror number 11 made clear that she did not see any of the notes. In response to the judge's questions, Juror number 11 clarified: "I do not believe the notes were taken . . . [d]uring the actual trial. I believe they were taken during breaks or after the trial outside the courthouse." She also referred to the note-taking juror as a "bully."

According to juror number 11, not including herself, two other jurors heard the conversation she had with the note-taking juror. This occurred at approximately 3:15 p.m. the previous day. The judge noted for the record that was the first day of jury deliberations, which began "somewhere around 1:45

[p.m.]." When the judge asked her if she had anything else to say about her observations of what occurred, Juror number 11 responded:

> No, just that I felt that it was a disadvantage, you know, and I felt that it was not my interpretation of the ruling was no cellphones on during deliberations and any video, audio anything capable of those things were supposed to be off during deliberations.

She also stated the juror who took the notes had an unfair advantage over her in deliberations because she could not take notes. She told the judge that she did not discuss this concern with any other juror, but she saw two jurors who were seated next to her at the time that may have overheard it. Juror number 11 assured the judge that this experience did not undermine her oath to assess the evidence fairly and impartially. However, she also said that the note-taking juror's participation in the discussions would not be of any value to her at this point. The judge directed juror number 11 to return to the jury room and gave her the following instructions:

> THE COURT: I'm going to ask you not to discuss what happened.
>
> JUROR NUMBER 11: I won't.
>
> THE COURT: If you feel intimidated in any manner when you go in there, please write another note immediately and I'll address it immediately, okay, so you're not to discuss it. . . . I didn't want to ask you in open court to identify the person who was using the cell

phone, but I have to ask you that and I want to explain to you the process since you brought that to my attention. Now, I have an obligation in the presence of the attorneys and . . . defendant to ask you about that, find out from he or she what happened and get more facts from that person, and then I want to also have to next go through each one of the jurors to see what they know. I'll ask their feelings of it. You did the right thing. Okay?

JUROR NUMBER 11: That's what I like doing, the right thing, and if I don't know, ask.

THE COURT: We have to make sure this is a fair process.

JUROR NUMBER 11: I want it to be fair.

THE COURT: So I'll try to make an inquiry of those people.

JUROR NUMBER 11: They're going to know it's me.

THE COURT: We can address that. Okay. And then I have to ask, have to go through each of the jurors just to see what they know, all right? So we still have an impaneled jury, I still have to continue to do due diligence and investigate and I really appreciate you fulfilling your obligation and following my instructions, and I'm just going to ask you to be patient and be calm. If there's any problem in that room, if you feel uncomfortable, you are to immediately write a note to myself, okay?

JUROR NUMBER 11: I already feel a little uncomfortable.

A-5045-16T4

> THE COURT: I'm sure you do, but we'll make sure that justice is served to everyone and proceed, okay? Thank you very much.

With the assistance of juror number 11, the judge identified juror number 8 as the juror who allegedly took notes of the trial with his cellphone. Before interviewing juror number 8, the judge conferred with counsel to determine if they had any questions. Both attorneys indicated they did not. The judge began his interview of juror number 8 by stating that "[a] concern [had] been raised that one of the jurors may have been taking notes on a cellphone." Juror number 8 immediately admitted he took notes during breaks, but did not show them to anyone. When the judge asked him why he did this, juror number 8 explained: "Just, I would like it to a report, anybody writes reports, just so that anything that I thought was important or that I should, you know, keep in my memory, I took a note, because, you know, sometimes you forget."

In response to the judge's question, juror number 8 confirmed he remained capable of fairly and impartially reviewing the evidence. With respect to the notes, the judge asked:

> THE COURT: The other question I have [is] are you able now to disregard those notes and depend upon the combined recollections of all the jurors of what happened in the testimony?
>
> JUROR NUMBER 8: Yes, sir.

THE COURT: And, sir, do you understand that if you forget something, if you wanted to listen to an aspect of the testimony, wanted a read-back of what was said, you can write me a note and I'll accommodate you.

JUROR NUMBER 8: I do understand that now, sir, yes.

Juror number 8 also stated that he did not mention he took notes about the trial nor discuss the content of the notes with any other juror. When the judge asked him if he had anything else to say, he stated:

JUROR NUMBER 8: I didn't do it maliciously. I just want to -- I'm from the mindset that I want to do everything straight and narrow, I don't want to make mistakes, something as important as this is. That's the only reason. It wasn't to do anything else but to try to make the correct decision, I'm very much -- I go by instructions, I like to keep everything dotted i's crossed t's, I don't want to make mistakes. That's the only reason I did that.

The judge excused juror number 8 and directed him to return to the jury room and not discuss what had transpired with anyone.

The judge next interviewed juror number 6. The judge advised juror number 6 that "one of the jurors may have utilized a cellphone to take notes." Juror number 6 told the judge that he became aware of it the day before, during deliberations. When the judge asked him to elaborate on what he saw, juror number 6 stated: "I didn't see anything but his reading his notes from his

cellphone." He also said he did not discuss this event with any of his fellow jurors and the notes did not influence him in any way. The judge excused juror number 6 from the courtroom and admonished him not to discuss this matter with his fellow jurors.

The judge next interviewed juror number 10; his testimony mirrored juror 6's testimony. The remaining jurors the judge interviewed did not have any knowledge of the cellphone notes, stated they did not take any notes, and confirmed they could serve impartially. At the conclusion of this comprehensive review, the judge invited counsel to state their position on the record. Both defense counsel and the prosecutor asked the court to remove juror number 8 from the jury.

Defense counsel argued juror number 11 stated that the jurors were discussing an "issue" when juror number 8 referred to his notes, elevated his voice, and caused her to feel intimidated. According to juror number 11, juror number 8 smothered the jury's discussion and acted like a "bully." Defense counsel also argued that juror number 8 admitted to deliberately violating the court's written instructions to the jury prohibiting both note-taking and reliance on cellphones. Under these circumstances, defense counsel argued that

"fairness" and "regard to the process itself" provided a sufficient legal basis for the court to remove juror number 8 "and replace him with the first alternate."

The prosecutor joined defense counsel's application for the removal of juror number 8.

> I don't think that he intentionally ignored your Honor's instructions to not take notes. I'm hearing him and evaluating his credibility, I do think it was at least to see how it could have been an honest mistake. That said, the State is concerned that juror number 8 is in a superior position of knowledge than the other 11 jurors, and I base that on the fact that the other 11 jurors are in that room recalling testimony that was as long as nine days ago at this point.

The judge again brought juror number 8 to the courtroom outside the presence of the remaining jurors to solicit more details about the use of the cellphone:

> THE COURT: Just had a couple of further questions.
>
> JUROR NUMBER 8: Yes, sir.
>
> THE COURT: First of all, when did you start taking these notes, what point in the trial?
>
> JUROR NUMBER 8: To be honest, I can't give you. I really didn't know, sir. I mean –
>
> THE COURT: Did you do it throughout the trial?
>
> JUROR NUMBER 8: No. Honestly, no. Not the whole entire time or did I do it on any regular basis, just if I

thought about it. I don't remember -- I wasn't necessarily coming back and immediately doing something -- it just. I couldn't give you an exact timeframe.

THE COURT: And in your notes, is it basically a summary of what happened in the courtroom?

JUROR NUMBER 8: It's more like facts, you know what I mean, like something that I thought, you know, I don't know how to describe it, like maybe inconsistencies or something like that.

THE COURT: In all the facts that you recorded, were they facts -- was all information contained in the confines of these four walls of this courtroom?

JUROR NUMBER 8: I don't understand your question, sir.

THE COURT: The notes that you wrote that contained facts, perhaps your opinions of inconsistencies --

JUROR NUMBER 8: Right.

THE COURT: Was it all based on information solely in this courtroom?

JUROR NUMBER 8: Yes, yes, sir.

THE COURT: In other words, did the notes also contain anything, any outside research you may have done?

JUROR NUMBER 8: No, no, I didn't do any of that, sir.

THE COURT: So the notes were shortly after the proceeding.

A-5045-16T4

13

JUROR NUMBER 8: Yes.

. . . .

THE COURT: Did anyone else in your home have access to your phone?

JUROR NUMBER 8: No, sir. Nobody touches it. My kids don't, my wife doesn't, no.

Based on this record, the judge denied the parties' request to remove juror number 8 and replace him with an alternate juror. The judge instructed juror number 8 to delete the notes on his cellphone, disregard anything he wrote, and base his participation in the deliberations on his recollection of the testimony at trial. The judge also charged the jury to rely on their collective recollection of the evidence presented at trial and directed them to disregard any reference to the notes. The jury renewed its deliberations and continued without interruption until it announced it had reached a unanimous verdict finding defendant guilty.

II

Defendant raises the following arguments.

POINT I

THE TRIAL JUDGE IMPROPERLY DECLARED A MISTRIAL OVER DEFENSE COUNSEL'S OBJECTION WITHOUT A "MANIFEST NECESSITY" TO DO SO; HENCE, THE DENIAL OF THE MOTION TO BAR THE SECOND TRIAL AS A VIOLATION OF DEFENDANT'S FEDERAL AND

STATE CONSTITUTIONAL RIGHTS AGAINST DOUBLE JEOPARDY SHOULD BE REVERSED.

POINT II

DEFENDANT WAS DENIED HER RIGHTS TO DUE PROCESS AND AN IMPARTIAL JURY WHEN A MEMBER OF THE JURY IMPROPERLY TOOK NOTES AND THEN USED THOSE NOTES IN DELIBERATION; WHEN ANOTHER JUROR BROUGHT THE MATTER TO THE COURT'S ATTENTION, THE TRIAL JUDGE IMPROPERLY LEFT THE OFFENDING JUROR ON THE JURY OVER THE OBJECTION OF BOTH DEFENSE COUNSEL AND THE PROSECUTOR -- BOTH OF WHOM ASKED FOR THE JUROR TO BE DISMISSED AND THE JURY TO RESUME DELIBERATIONS ANEW WITH A NEW MEMBER.

The decision whether to grant a mistrial rests within the sound discretion of the trial judge. State v. LaBrutto, 114 N.J. 187, 207 (1989). As an appellate court, we are bound to uphold such a decision absent a clear showing that the trial judge abused his or her "discretion or that the defendant suffered actual harm." Ibid. Furthermore, "[w]here a trial court declares a mistrial because of a substantial concern that the trial's result may be tainted, 'the trial judge's determination is entitled to special respect.'" State v. Loyal, 164 N.J. 418, 436 (2000). We must also apply an abuse of discretion standard when reviewing a trial judge's decision to remove and substitute a deliberating juror. State v. Musa, 222 N.J. 554, 564-65 (2015).

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso–Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). An appellate court defers to a trial court's finding of fact, provided it is "supported by adequate, substantial and credible evidence." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). But "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995).

Against this standard of review, we first address defendant's argument attacking the trial judge's decision to declare a mistrial sua sponte in the first trial. Defendant argues the trial judge erred in denying her motion to dismiss the indictment on federal and state double jeopardy grounds, because there was no "manifest necessity" requiring the grant of a mistrial over her counsel's objection. The State maintains the trial judge properly exercised his authority in granting a mistrial because agents of the ACPO were required to interview individual jurors in connection with an unrelated criminal investigation. We

conclude the trial judge properly exercised his discretionary authority to declare a mistrial. The jury's role to impartially carry out its fact-finding role was irreparably compromised when a number of jurors witnessed the surreptitious activities of this third-party. This prompted the direct involvement of investigators from the ACPO, the same law enforcement agency that was prosecuting defendant in this case.

We start our analysis by reaffirming certain bedrock principles of our criminal justice system. The Fifth Amendment of the United States Constitution provides, in relevant part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The New Jersey Constitution provides: "[n]o person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, ¶ 11. This protection against being placed twice in jeopardy for the same offense is also codified in N.J.S.A. 2C:1-9.

The defense of double jeopardy does not require that a previous trial result in a not guilty verdict. State v. Farmer, 48 N.J. 145, 169 (1966). Jeopardy attaches when a jury is impaneled and sworn, and at that point, a defendant is ordinarily entitled to the case proceeding to a jury verdict. State v. Dunns, 266 N.J. Super. 349, 362 (App. Div. 1993); Farmer, 48 N.J. at 169. If the jury is discharged prior to the verdict, in the absence of defendant's consent or without

a legal basis, "the abortive ending is equivalent to acquittal and bars retrial." Farmer, 48 N.J. at 169.

However, there are certain scenarios where a jury can be discharged before reaching a verdict, where the protection against double jeopardy is inapplicable. Dunns, 266 N.J. Super at 363. One of these scenarios has been codified under N.J.S.A. 2C:1-9(d)(3). Once a jury has been impaneled and sworn, the prohibition against double jeopardy does not apply provided "[t]he trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity." N.J.S.A. 2C:1-9(d)(3). Thus, defendant's double jeopardy argument depends on whether the trial judge's sua sponte declaration of a mistrial was predicated on a "manifest necessity."

In Loyal, our Supreme Court emphasized that the declaration of a mistrial depends on the unique facts of the case and is within the discretion of the trial court. 164 N.J. at 435. The Court identified the following questions to guide a judge to determine whether a mistrial declaration is warranted:

> [1] Did the trial court properly exercise its discretion so that a mistrial was justified? [2] Did it have a viable alternative? If justified, what circumstances created the situation? [3] Was it due to prosecutorial or defense misconduct? [4] Will a second trial accord with the ends of public justice and with proper judicial administration? [5] Will the defendant be prejudiced by a second trial, and if so, to what extent?

[Id. at 436-37 (quoting State v. Rechtschaffer, 70 N.J. 395, 410-411 (1976)).]

In Farmer, Justice Francis, writing for a unanimous Court, expounded upon the principles underpinning this constitutional protection:

> [T]he double jeopardy protection does not mean that once an accused has been put on trial regularly, the proceeding must run its ordinary course to judgment of conviction or acquittal. The rule does not operate so mechanistically. If some unexpected, untoward and un[-]designed incident or circumstance arises which does not bespeak bad faith, inexcusable neglect or inadvertence or oppressive conduct on the part of the State, but which in the considered judgment of the trial court creates an urgent need to discontinue the trial in order to safeguard the defendant against real or apparent prejudice stemming therefrom, the Federal and State Constitutions do not stand in the way of declaration of a mistrial. And this is true even if the conscientious act of the trial judge may be characterized as the product of "extreme solicitude" or "overeager solicitude" for the accused.
>
> [48 N.J. at 174.]

When we apply these fundamental constitutional principles to the facts in this case, it becomes axiomatic that the trial judge properly declared a mistrial sua sponte. The members of this jury were about to be interviewed by investigators from the ACPO. It is highly likely that these jurors would be called as witnesses for the State in this unrelated trial. These circumstances created a

manifest necessity for a mistrial. Finally, the mistrial did not prejudice defendant. At the time the judge declared the mistrial counsel had just completed their opening statements and no witnesses had testified.

## III

We next address defendant's arguments attacking the legal viability of the second trial that led to her conviction. Defendant argues the trial judge erred when he denied the joint motion made by defense counsel and the prosecutor to remove juror number 8 and replace him with an alternate juror. We have described at length the facts that led to this joint application. Defendant argues the juror's decision to write notes using his cellphone, in direct defiance of the judge's instruction, violated her right to an impartial jury and due process of law, as guaranteed by our federal and state constitutions. The State argues that once deliberations were underway, the trial judge properly applied Rule 1:8-2(d)(1) to support his decision to deny counsel's joint application to remove juror number 8 from the jury.

"It is the trial judge's duty to investigate any claims that may affect the integrity of the jury's deliberations." State v. Gleaton, 446 N.J. Super. 478, 518 (App. Div. 2016) (citing State v. Dorsainvil, 435 N.J. Super. 449, 487 (App. Div. 2014)). "Rule 1:8-2(d)(1) governs the removal and substitution of jurors

in civil and criminal trials, both before and after the commencement of deliberations." State v. Jenkins, 182 N.J. 112, 123 (2004). Once deliberations have begun, a juror may be replaced only under certain circumstances. Id. at 123-24. A deliberating juror may only be replaced with an alternate juror because of death, illness, or other inability to continue. R. 1:8-2(d)(1).

Here, the only basis to remove juror number 8 was "inability to continue." The trial judge needed to determine whether the juror's failure to adhere to the court's instruction not to take notes constituted an "inability to continue" under Rule 1:8-2(d)(1). Our Supreme Court has narrowly construed this ground for removing a juror. Jenkins, 182 N.J. at 124. In order to protect a defendant's right to a fair trial, substitution of a deliberating juror is forbidden if the "removal is in any way related to the deliberative process." Ibid. For a juror to be found unable to continue, the record must "adequately establish that the juror suffers from an inability to function that is personal and unrelated to the juror's interaction with the other jury members." Id. at 125 (citing State v. Hightower, 146 N.J. 239, 254 (1996)).

The "inability to continue" standard is difficult to meet. Substitution has been invoked as "a last resort" in cases where jurors have been found unable to continue because of financial hardship, issues of great emotional distress that

impair the juror's judgment, and a brazen disregard of a trial court's unambiguous instruction.  Id. at 125-26.  In these situations, trial judges are empowered to make credibility determinations of a juror's demeanor during voir dire to determine whether the inability to continue standard has been met.  See State v. Singletary, 80 N.J. 55, 63 (1979).

In State v. Holloway, this court approved the trial judge's removal of a deliberating juror when the juror violated the court's unambiguous and repeated instructions not to discuss the case with anyone outside of the deliberative process.  288 N.J. Super 390, 404 (App. Div. 1996).  The discharged juror admitted she improperly had a conversation with her relative about the merits of the case.  Ibid.  The juror also admitted the conversation influenced her to some degree.  Ibid.  Under these circumstances, the trial judge concluded the juror was unable to remain on the jury because her judgment of the case had been irreparably compromised by information obtained from sources outside the deliberative process.  Stated differently, this juror was no longer capable of serving fairly and impartially.[1] Ibid.

---

[1] Despite approving the removal of the juror, the Supreme Court in Jenkins expressly disapproved "of that part of the holding in State v. Holloway that allowed a substitute juror to join a jury that had announced its verdict to convict."  182 N.J. at 133, n.2.

Here, in sharp contrast to the discharged juror in Holloway, juror number 8 unequivocally affirmed his commitment to evaluate the evidence in the case fairly and impartially. The judge also found juror number 8 to be "extremely credible and contrite" and instructed him to delete the notes from his cellphone and to rely only on his recollection of the evidence and on the collective recollection of his fellow jurors during deliberations. The judge expressly found that the notes did not contain any outside sources of information, nor relate to anything that occurred outside the courtroom. Under these circumstances, we hold the trial judge's decision to retain juror number 8 on the jury was supported by the record and constituted a valid exercise of his discretionary authority.

Defendant's unsupported assertion that juror number 8's note-taking tainted the jury's deliberations with impermissible bias against her lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). The record shows the judge instructed the jury to disregard any discussions that may have referenced the notes in anyway. Absent evidence otherwise, a jury is presumed to follow the trial court's instructions. State v. Burns, 192 N.J. 312, 335 (2007).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION